**DELNO v. MARKET ST. RY. CO. et al.**

No. 9838.

Circuit Court of Appeals, Ninth Circuit.

Jan. 15, 1942.

Morgan J. Doyle, J. Joseph Sullivan, and Charles P. Scully, all of San Francisco, Cal., for appellant.

William M. Abbott, Stephen R. Duhring, and Chickering & Gregory, all of San Francisco, Cal., for appellee Market St. Ry. Co.

Samuel S. Stevens and Hellér, Ehrman, White & McAuliffe, all of San Francisco, Cal., for appellee Wells Fargo Bank & Union Trust Co.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

Appellant seeks reversal of an order dismissing his action which was brought under the Declaratory Judgments Act, Act of June 14, 1934, Ch. 512, 48 Stat. 955, 28 U.S.C.A. § 400.

The complaint alleged the facts hereafter related. On April 1, 1924, appellee Market Street Railway Company, hereafter called the company, made an Indenture of First Mortgage conveying certain of its real and personal property in California to appellee Wells Fargo Bank & Union Trust Co., hereafter called the trustee, as security for $13,000,000 of its 7% bonds due April 1, 1940. The mort-

gage further provided: "The Company shall not extend nor consent to the extension of the time of payment of said bonds or of any interest coupons and if such extension be made, whether with or without the consent of the Company, such bond or interest coupon or claim or interest represented thereby shall be subject to prior payment in full of the principal of the bonds and coupons whose payment shall not have been so extended."

Appellant is the owner of five $1,000 bonds.

About April 1, 1940, the owners and holders of certain of the bonds agreed to extend the maturity date of the bonds to April 1, 1945 and to a reduction in the interest rate on the bonds, but appellant did not so agree. On April 1, 1940, the company delivered to the trustee a "Supplemental Indenture" for the benefit of those who entered into the agreement above stated. Subsequent to April 1, 1940, the trustee paid interest on the bonds the owners of which had agreed to the extension, but did not pay interest on appellant's bonds.

In addition to these facts, appellant alleged that his bonds were still secured by a first mortgage on the property described in the mortgage of April 1, 1924, and that the lien of the extended bonds was junior and subservient to his lien; that it was the duty of the appellees to refrain from paying principal and interest on the extended bonds until his bonds are paid in full; and that appellees made contentions which are contrary to each of those mentioned.

Appellant prayed for a decree declaring that (1) his bonds were secured by the first mortgage; (2) there is now due and unpaid on the bonds the principal sum of $5,000 with 7% interest from April 1, 1940; (3) lien of appellant's bonds is superior to that of the extended bonds; (4) it is the duty of appellees to refrain from paying the principal and interest on the extended bonds until appellant's bonds are paid in full; and (5) the trustee violated its duties and obligations under the first mortgage by becoming a trustee under the Supplemental Indenture. Appellant also prayed for other and further relief appropriate in the premises; and for costs.

Appellees moved to dismiss the complaint on the following grounds: (1) the complaint failed to state a claim upon which relief could be granted; (2) the court had no jurisdiction over the subject matter of the action; (3) the court in the exercise of its discretion should decline to take jurisdiction over the subject matter; and (4) that appellant was precluded from maintaining the action by the provisions of § 726 of the Cal.Code of Civil Procedure.

Supporting the motion was an affidavit of an officer of the company stating that prior to August 29, 1939, the company had retired $8,263,000 of bonds, and that it was apparent that it would not be able to pay the remainder of the bonds on the maturity date; that the company proposed that the maturity date of the bonds be extended and the interest rate reduced; that on the date mentioned, the company filed a petition with the California Railroad Commission praying that the latter approve the plan mentioned; that on October 17, 1939, the Railroad Commission issued its decision and order, a copy of which is attached to the affidavit; that the holders of more than 90% of the outstanding bonds accepted the plan; and that if the plan had not been adopted, it would have been necessary for the company to file a petition for reorganization under the Bankruptcy Act.

The Railroad Commission approved the plan, saying: "The order herein will approve the proposed refinancing plan. Such an order, of course, does not compel any holder of bonds to deposit them under the plan. It is for them to determine whether they can realize more by exercising their legal rights in a public foreclosure proceeding or bankruptcy proceeding than by accepting the plan now offered them. In our opinion the plan is fair to the bondholders. It imposes no expense on them. While it does provide for a reduction in the rate of interest paid, it should be remembered that from the time of issue of the bonds, in 1924, to the present, the holder of this company's bonds have enjoyed regular annual interest returns at the rate of 7 per cent per annum, and have seen the company reduce the total amount of bonds outstanding from $13,000,000 to $4,709,000. The same deed of trust that secured the bonds at present will remain intact, except for amendments to provide for changes in date of maturity, rate of interest and sinking fund, and

will continue to secure the payment of the outstanding bonds as modified."

The court below stated in its opinion that there was no dispute as to the facts which were fully disclosed by the complaint and the decision of the Railroad Commission, and that since the case was presented and argued upon the showing thus made, the presentation thereof was tantamount to submission on an agreed statement of facts. The trial court held:

"I am of the opinion that no useful purpose would be served by a trial of the controversy in the District Court; that a trial here would not settle the entire controversy, and that for this Court to accept jurisdiction in a controversy involving a matter passed upon by the Railroad Commission, of which it had exclusive jurisdiction, would be improper.

"Under the circumstances I feel justified in declining the proffered jurisdiction. The motion to dismiss will therefore be granted."

This appeal was taken from the order of dismissal thereafter entered.

Appellee contends, as the court below held, that the granting of relief under the act in question is discretionary with the trial court. The act itself states that in "cases of actual controversy * * * the courts of the United States shall have power * * * to declare rights and other legal relations of any interested party * * * whether or not further relief is or could be prayed * * *". Federal Rules of Civil Procedure, Rule 57, 28 U.S.C.A. following section 723c, contains no statement indicating that the trial court's action is or is not discretionary. The note to such rule, however, clearly indicates by its tenor that the trial court's action is discretionary, and also contains the statement: "In other respects the Uniform Declaratory Judgment Act affords a guide to the scope and function of the federal act". Section 6 of the Uniform Declaratory Judgments Act provides: "§ 6. *Discretionary.* —The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncer-

tainty or controversy giving rise to the proceeding."

To that effect see Borchard, Declaratory Judgments, 2d Ed., 312, 313.[1]

The word "discretion" is not a happy choice in this connection, because of the different senses in which it can be used. "Discretion" in one sense is explained as follows: "The discretion of a judge is said by Lord Camden to be the law of tyrants: it is always unknown, it is different in different men; it is casual, and depends upon constitution, temper and passion. In the best, it is oftentimes caprice; in the worst, it is every vice, folly, and passion to which human nature is liable * * *". 1 Bouv.Law Dict., Rawles' Third Revision, p. 885. Whether any judicial action is discretionary in that sense, it is unnecessary to determine. If it is, the action is final and cannot be upset on appeal.

In a second sense, and the one most commonly meant in the use of the word in the law, "discretion" is defined as: "The power exercised by courts to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court." 1 Bouv.Law Dict., Rawles' Third Revision, p. 884. Judicial action—discretionary in that sense—is said to be final and cannot be set aside on appeal except when there is an abuse of discretion. A common example is a court's ruling on the extent of cross-examination. Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624. Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

Undoubtedly declaratory judgments are discretionary in the second sense mentioned. On appeal are we limited by the rule that discretionary action can be set

---

[1] There seems to be a dispute as to the contents of the Senate Judiciary Committee Report on the federal act. Compare Borchard, Declaratory Judgments, 2d Ed., 312, last sentence with Ætna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321, 324.

aside on appeal only if there has been an abuse of discretion as above stated, or may such action be set aside if we decide that the decision of the trial court, while not arbitrary, is erroneous?

The statute provides that the declaratory judgment "shall have the force and effect of a final judgment or decree and be reviewable as such". 28 U.S.C.A. § 400(1). Section 7 of the uniform act provides that such a judgment "may be reviewed as other orders, judgments and decrees". We think this is indication that we may substitute our judgment for that of the court below. Professor Borchard agrees with that view. Borchard, Declaratory Judgments, 2d Ed., pp. 253, 254, 293, 294.

Should declaratory relief be granted in the instant case? That question really involves two questions: (1) Is this the kind of case intended to be covered by the remedy of declaratory actions; and (2) do the facts substantiate appellant's claim to relief? The first question may be briefly referred to as the propriety of granting the relief, and the second as the merits.

Regarding the propriety of granting the relief, the federal act merely authorizes declaration of rights and other legal relations "whether or not further relief is or could be prayed." Declaratory relief should not be refused merely because there is another adequate remedy, Federal Rules of Civil Procedure, Rule 57, available to appellant. In Borchard, Declaratory Judgments, 2d Ed., 299, it is said: "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed."

See also 9 U.L.A. 127, § 6. In the note to Rule 57, Federal Rules of Civil Procedure, it is said: "When declaratory relief will not be effective in settling the controversy, the court may decline to grant it."

The controversy here is actually between the holders of the bonds who had agreed to the extension of April 1, 1940, and appellant. Appellant seeks to have the lien of his bonds declared to be superior to the lien of the bonds the owners of which agreed to the extension. He further seeks a declaration that the trustee had certain duties which were breached, but the existence and alleged breach of such duties is entirely dependent on the outcome of the controversy between appellant and the bondholders who agreed to the extension. In other words the whole basis of the action is the controversy between the two classes of bondholders mentioned, yet the bondholders who agreed to the extension are not made parties to the action.

In Borchard, Declaratory Judgments, 2d Ed., 299, it is said: "The uncertainty would not be terminated where the proceedings indicate the absence or failure to join necessary parties in interest who ought to be heard or bound". The note to Rule 57, Federal Rules of Civil Procedure, states that "all parties having an interest therein or adversely affected must be made parties or be cited". Federal Rules of Civil Procedure, Rule 19(a), requires parties having a "joint interest" to be joined in an action, which means "those who were necessary or indispensable parties under the previous practice". 2 Moore's Federal Practice 2142, § 19.02. We need not decide whether or not the court below could have proceeded to render judgment here, in the absence of the bondholders who had agreed to the extension, on the ground that they were either indispensable or necessary parties. State of Washington v. United States, 9 Cir., 87 F.2d 421, 425-429; 2 Moore's Federal Practice 2160, § 19.04; 3 Ohlinger's Fed.Prac. 315.

Appellant seeks to have his rights as a bondholder declared to be superior to the rights of other bondholders. All bonds were issued pursuant to the same trust instrument and were of the same priority. It would seem that he seeks to have the courts adjudicate directly on the rights of the absent bondholders. However, it is apparent that any judgment rendered would not bind the absent bondholders, and appellant makes no assertion that it would do so. While such a judgment might terminate the issue between the parties now before it, it would not finally settle the issue because the absent bondholders would have the right to litigate

the same question. The judgment, therefore, would not meet either criteria guiding the policy in favor of rendering declaratory judgments. It would not serve a useful purpose in clarifying and settling the issue as to priority of the bonds, because the issue would not be finally settled.

Appellant contends that the trial court erred in other reasons given by it. We need not consider such contentions. Appellant further contends that the issue would be finally settled as between the parties now before the court. As above stated, we think that is not enough.

Affirmed.