McGRAW–EDISON COMPANY, a
corporation, Appellant,

v.

PREFORMED LINE PRODUCTS COM-
PANY, a corporation, Appellee.

No. 20023.

United States Court of Appeals
Ninth Circuit.

May 26, 1966.

Herbert A. Huebner, Richard M. Worrel, Harlan P. Huebner, Albert L. Gabriel, Huebner & Worrel, Los Angeles, Cal., Charles A. Prudell, Milwaukee, Wis., for appellant.

Reginald E. Caughey, Lyon & Lyon, Los Angeles, Cal., Patrick H. Hume, Henry L. Brinks, Chicago, Ill., Richard F. Stevens, J. Richard Hamilton, Cleveland, Ohio, for appellee.

Before JERTBERG and ELY, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge:

This is an appeal from an order dismissing, without prejudice, a complaint for patent infringement and a counterclaim for declaratory judgment.

The appellee, Preformed Line Products Company, filed a complaint on May 1, 1958, against the City of Los Angeles and appellant, McGraw-Edison Company, charging infringement of United States Letters Patent No. 2,761,273, granted September 4, 1956, for "Dead-End For Cables".[1] Both defendants filed answers and counterclaims.

A stipulation was filed June 15, 1964, dismissing without prejudice the complaint as to the City of Los Angeles and the City's counterclaim for a declaratory judgment. On February 24, 1965, the district court, upon motion of Preformed, opposed by McGraw-Edison, dismissed without prejudice both the complaint and appellant's counterclaim.

Preformed, on October 29, 1956, had filed suit in the United States District Court for the Northern District of Ohio against The Fanner Manufacturing Company, alleging infringement of two patents and unfair competition. One of the patents charged to be infringed was No. 2,761,273 for "Dead-End For Cables". The instant action was brought by Preformed against the City of Los Angeles and McGraw-Edison alleging their use and sale, respectively, of dead ends made by The Fanner Manufacturing Company and charged to infringe Patent No. 2,-761,273.

The Ohio case was tried in January-February, 1959. Although no decision in the Ohio action had been announced, the parties in this action stipulated on November 3, 1959, that the case should be removed from the trial calendar.[2]

By judgment dated May 17, 1962, the United States District Court for the Northern District of Ohio determined that the dead end patent was valid and

1. Jurisdiction in the district court was conferred by 28 U.S.C. §§ 1338(a) and 1400 (b) and 35 U.S.C. §§ 281-285. This appeal was taken under 28 U.S.C. § 1291.

2. The order entered pursuant to the stipulation recited that the court had been "advised by counsel for both parties of the pendency of an action in the United States District Court for the Northern District of Ohio, Eastern Divison, involving substantially the same issues and the fact that said case had been tried and was under submission and that the decision in said case might dispose of this action * * *".

infringed by Fanner and that Preformed was entitled to an injunction against further infringement and to damages for past infringement. Preformed Line Products Co. v. Fanner Mfg. Co., N.D. Ohio 1962, 225 F.Supp. 762. The judgment was affirmed by the Court of Appeals for the Sixth Circuit on February 19, 1964, (328 F.2d 265) and rehearing was denied May 17, 1964. Certiorari was denied by the Supreme Court on October 12, 1964. (379 U.S. 846, 85 S. Ct. 56, 13 L.Ed.2d 51.)

This case remained off the calendar for about three years. Pursuant to a local court rule, it was then placed on the calendar for consideration of dismissal for want of prosecution. A hearing was held October 15, 1962. Upon representation to the court that the case in the Northern District of Ohio had been tried but that the plaintiff, Preformed Line Products Company, was required to purge itself of "unclean hands", which subsequently was held to have been accomplished, and that the case was then on appeal, the district court ordered that the order of November 3, 1959, would be continued in effect.

On April 15, 1964, McGraw-Edison filed a notice restoring the action to the trial calendar. Thereafter McGraw-Edison filed a motion for leave to file an amended and supplemental answer and counterclaim. An order was entered June 25, 1964, granting McGraw-Edison's motion, subject to certain conditions and exceptions. On July 31, 1964, McGraw-Edison filed its first amended and supplemental answer and counterclaim.

Thereafter depositions were taken in Cleveland, Ohio. On September 16, 1964, McGraw-Edison filed a motion to compel answers to questions on oral depositions and a motion to set the case for trial. Preformed filed a motion to strike the fifth cause of defendant's counterclaim, which sought a declaratory judgment with respect to a modified device known as "Straight-Bight Fanngrip". On September 24, 1964, the court denied the motion to strike, granted defendant leave to file a second amended answer and counterclaim, and set the case for trial to commence February 6, 1965.

Preformed filed its answer to the counterclaim of McGraw-Edison as amended and supplemented, and on January 8, 1965, McGraw-Edison filed a motion to strike the answer. Shortly thereafter Preformed sought to have McGraw-Edison charged in contempt in the Ohio case. On January 15, 1965, the district court in this action granted an order to show cause and temporary restraining order restraining Preformed from proceeding against McGraw-Edison in the Ohio case.

On January 19, 1965, Preformed filed a motion to dismiss this action "on the ground that all justiciable matters and issues raised herein are presented in, and fully determinable by" the Ohio case. On February 24, 1965, the court granted Preformed's motion to dismiss its complaint without prejudice and also ordered dismissal without prejudice of the McGraw-Edison counterclaim. This order was supplemented by a nunc pro tunc order on May 10, 1965, dismissing the "action in its entirety".

The order of February 23, 1965, reads in pertinent part:

"Rule 41(a) (2) of the Federal Rules of Civil Procedure permits dismissal even though a counterclaim has been filed where, as here, the counterclaim can remain pending for independent adjudication by the court. Here, defendant's counterclaim is for declaratory relief and could remain pending; however, in light of the dismissal of the complaint and the pending litigation in Cleveland, Ohio, the counterclaim should also be dismissed without prejudice.

"Plaintiff's motion to dismiss complaint and counterclaim is granted without prejudice and each party to bear its own costs."

Rule 41(a) (2) F.R.Civ.P. provides in pertinent part: " * * * If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall

not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. * * * "

■ The parties agree that McGraw-Edison's counterclaim could have remained pending for independent adjudication notwithstanding dismissal of the complaint. The dismissal of the complaint without prejudice accordingly was proper under Rule 41(a) (2). The question then arises as to whether the trial court could properly dismiss the counterclaim for declaratory relief. The answer to this question does not depend upon Rule 41(a) (2),[3] but rather upon a construction of the Federal Declaratory Judgment Act.

The Declaratory Judgment Act (28 U.S.C. § 2201) provides that in "a case of actual controversy within its jurisdiction", a court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought". Rule 57 of the Federal Rules of Civil Procedure provides, "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."[4]

■ Professor Borchard has well stated the applicable rules for determining when declaratory relief is appropriate:

"The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It fol-

lows that when neither of these results can be accomplished, the court should decline to render the declaration prayed." Borchard, Declaratory Judgments 299 (2d ed. 1941).[5]

■ Ordinarily the question of whether a district court shall exercise jurisdiction in a declaratory judgment action rests in the sound discretion of that court. As this court said in Shell Oil Co. v. Frusetta, 9 Cir. 1961, 290 F.2d 689, 691–692:

"It is well established that even though jurisdiction may exist under the Declaratory Judgment Act the granting of declaratory judgments is at the discretion of the district court. (Citing cases.) Said discretion is to be exercised in accordance with sound judicial principles and the purposes of the Declaratory Judgment Act. * * * The purpose of the Declaratory Judgment Act is to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim."

■ The bases for refusing declaratory relief were well summarized in Yellow Cab Co. v. City of Chicago, 7 Cir. 1951, 186 F.2d 946, 950–951, as follows:

"The discretion of a court to entertain a suit for declaratory judgment is a 'judicial discretion' which must find its basis in sound reason * * * and jurisdiction is not to be declined merely because of the existence of another adequate legal remedy * * * or even because of the pendency of another suit, if the controversy between the

---

3. Rule 41(a) (2) neither precluded nor required dismissal of the counterclaim since it could remain pending for independent adjudication.

4. The note of the Advisory Committee on Rule 57 reads in part: "When declaratory relief will not be effective in settling the controversy, the court may decline to grant it." Notes of Advisory Committee on Rules, Rule 57, 28 U.S.C.A., at p. 568 (1960).

5. This statement from Borchard has been quoted with approval in many cases, including Maryland Casualty Co. v. Boyle Constr. Co., 4 Cir. 1941, 123 F.2d 558, 565; Delno v. Market St. Ry., 9 Cir. 1942, 124 F.2d 965, 968; and American Casualty Co. of Reading, Pa. v. Howard, 4 Cir. 1949, 173 F.2d 924, 928.

parties is such that it will not necessarily be determined therein * * *. It is well settled, however, that a declaratory judgment may be refused where it would serve no useful purpose * * * or would not finally determine the rights of the parties * * or where it is being sought merely to determine issues which are involved in a case already pending and can be properly disposed of therein * * * especially if the issue is one involving a novel question of state law * * * or is, for any other reason, one that can better be adjudicated in another court * * *. Nor should declaratory relief be granted where it would result in piecemeal trials of the various controversies presented or in the trial of a particular issue without resolving the entire controversy * * *." (Citations omitted as indicated by asterisks).

■■ No one factor necessarily controls the court in determining whether it should entertain an action for declaratory judgment. Multiplicity of litigation, however, is always an important factor. As Professor Moore has well said:

"The maintenance of separate actions involving the same issues should be discouraged. Where a declaratory action presents issues which would necessarily be settled by another pending state or federal action, the court should weigh the relative merits of each of the two actions *as of the time of the hearing on the motion to dismiss*. The decision on the motion to dismiss should be determined in the light of the purposes of the Act, and by the same principles that normally govern the exercise of judicial discretion in this field— whether a declaratory judgment would serve a useful purpose 'in clarifying and settling the legal relations in issue,' and whether it would 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding'." 6 Moore, Federal Practice § 57.08[6], at 3042 (2d ed. 1965).

We turn now to the application of these rules to the instant case. It may be noted at the outset that if the case involved the dismissal of an independent action for declaratory judgment, rather than a counterclaim, the district court clearly would have discretion to dismiss by reason of the pendency of the Ohio case. Appellant does not question this conclusion, but argues that in the posture of the entire proceedings in both courts, Preformed having filed both actions, with different defendants, the district court abused its discretion in dismissing the counterclaim. It further argues that the dismissal deprived appellant of due process of law.

As noted supra, the district court dismissed the counterclaim "in light of the dismissal of the complaint and the pending litigation in Cleveland". Both parties assume that the court accepted one or more of the reasons urged by appellee in its motion to dismiss:

"1. Fanner and McGraw-Edison are acting in contempt of the United States District Court in Cleveland when they collaborate to maintain this action;

"2. The determinations of said District Court as to Fanner products are binding upon McGraw-Edison;

"3. The authorities, especially E. B. Kaiser Co. v. Ric-Wil Co., 95 F.Supp. 54 (N.D.Ohio 1950) demonstrate that said District Court should be allowed to construe its own injunction;

"4. No justiciable issue is created by McGraw-Edison's 'plan' to manufacture dead ends independently if Fanner is unsuccessful."

Prior to the dismissal of this action, Preformed filed motions in the Ohio case to punish Textron, Inc.[6] and McGraw-

6. The Fanner Manufacturing Co. was the defendant in the Ohio case. Textron, Inc. is the successor in interest to Fanner. The Fanner Manufacturing Co. has been dissolved, and its business has been continued as Fanner Division of Textron, Inc. (Preformed Line Products Co. v. Fanner Mfg. Co., supra, at 328 F.2d 267).

Edison for contempt in conspiring to violate the judgment and injunction issued by the Ohio court. McGraw-Edison argues that it was not a party to the Ohio litigation, is not bound by the "Cleveland injunction", and that the case of E. B. Kaiser Co. v. Ric-Wil Co. is inapposite since there the same parties were involved in actions instituted in Illinois and Ohio.

■■ Appellee in effect concedes that McGraw-Edison is not bound by the Cleveland judgment and injunction. It does contend, however, that the Ohio court's determination of infringement by Fanner applies equally to all persons who knowingly purchase infringing products from Fanner, and that the Ohio court has jurisdiction to punish for contempt McGraw-Edison or any other person who knowingly aids and abets Fanner in violating the injunction. We agree. Nonparties may be found in contempt of an injunction provided they have actual notice of the injunction and aid or abet in its violation. See Ex parte Lennon, 1897, 166 U.S. 548, 554, 17 S.Ct. 658, 41 L.Ed. 1110, 1113; Rule 65(d) F.R.Civ.P.

The parties agree that as yet there has been no determination in the Ohio litigation of whether the "Straight-Bight Fanngrip" does or does not infringe the patent. This device first appeared on the market after final judgment was entered in the Ohio case. The question of whether it infringes the patent and violates the injunction has been raised in the Ohio court in the contempt proceedings.[7] If the Ohio court finds that the "Straight-Bight Fanngrips" infringe the patent and their production violates the injunction, Fanner will be prevented from the manufacture and sale of that product. If the Ohio court finds that the production of this product does not violate the injunction, then Preformed will be barred from contesting McGraw-Edison's right to purchase it from Fanner.

On the other hand, if the district court in this case should hold that the "Straight-Bight Fanngrip" infringes the patent, this determination would not be binding upon Fanner, the manufacturer of the product, and Fanner would still be entitled to a trial of this issue in the Ohio court. It appears accordingly that the issue should first be determined in the Ohio court, where any judgment will be binding upon the manufacturer of the product. Since its counterclaim for declaratory relief was dismissed without prejudice, McGraw-Edison may pursue any appropriate remedy it deems necessary.

We agree with appellee and the district court that "no justiciable issue is created by McGraw-Edison's plan to manufacture dead-ends independently if Fanner is unsuccessful". There is no evidence that McGraw-Edison has made any dead-ends of the type charged to infringe Preformed's patent. All dead-ends presently involved in this action, including the "Straight-Bight Fanngrips", were purchased by McGraw-Edison from The Fanner Manufacturing Company, now a division of Textron, Inc. There is "no actual controversy" with respect to any dead-ends which McGraw-Edison might plan to manufacture in the future. See Aetna Life Ins. Co. v. Haworth, 1937, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617.

■ It is true, as appellant contends, that this court might "substitute [its] judgment for that of the court below". Delno v. Market St. Ry., supra, at 124 F.2d 968. On the other hand, as the Supreme Court said in Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 1952, 342 U.S. 180, 183–184, 72 S.Ct. 219, 221, 96 L.Ed. 200, "Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts". While the district court might properly have permitted the counterclaim to stand pending determina-

---

7. Apparently the question of whether the "Straight-Bight Fanngrip" infringes the dead end patent has also been raised in a declaratory judgment action brought by Textron against Preformed in Ohio, which has been consolidated for trial with Preformed's contempt action.

345

tion of the Ohio litigation, its dismissal under the circumstances was likewise proper. The district court did not abuse its discretion.

The judgment is affirmed.