443 So.2d 130 (1983)
Carol Serns BERGMAN, Daughter of the Incompetent Ward, Beatrice Greenfield, Appellant,
v.
David R. SERNS, Appellee.
No. 83-293.
District Court of Appeal of Florida, Third District.
December 6, 1983.
Rehearing Denied January 20, 1984.
*131 Ann Mason Parker, Miami, for appellant.
Ruden, Barnett, McClosky, Schuster & Russell and Woodrow "Mac" Melvin, Jr. and James R. George, Fort Lauderdale, for appellee.
Before SCHWARTZ, C.J., and HUBBART and FERGUSON, JJ.
SCHWARTZ, Chief Judge.
In resolving one of the most agonizing consequences of an all-too-familiar modern tragedy, we hold that the transfer of the elderly ward from her own home to a nursing or old age facility may not be ordered in the absence of an affirmative showing, which was not presented below, that such a placement is required for her proper care and well-being.
The ward in question, Mrs. Beatrice Greenfield, who is now eighty-one years of age, was declared incompetent in 1981 after suffering from Alzheimer's Disease for several years. Formerly, as all acknowledge, a vibrant, intelligent and loving person, she is now afflicted with the disabilities of memory and cognition that dreaded ailment entails. Moreover, the profound adversity which has befallen Mrs. Greenfield has been greatly exacerbated by an appallingly bitter dispute over her interests and care  one which is also not uncommon in our society  between her two adult children, the appellant Carol Bergman and the appellee David Serns.
For many years, Mrs. Greenfield has lived in the oceanfront condominium home she shared with her husband before his death. For at least the past six years, she has done so with the aid of a full-time nurse which her affliction has rendered indispensible. In 1983, Mr. Serns, who is under an agreed, court-ordered obligation to provide, inter alia, for those nursing expenses,[1] moved the probate court for an order requiring and approving his mother's transfer, which he had previously arranged, to the Miami Jewish Home for the Aged.[2] Both Mrs. Greenfield's personal physician and one appointed by the court to *132 examine her testified at the ensuing hearing that she was comfortable and receiving excellent care at home, and that she should remain in her home "for the present" and "for some years yet," rather than suffer the trauma of being removed to a totally new and unfamiliar environment; there was no contrary expert testimony. On the basis, however, of his brief observation of and conversation with the ward herself at the hearing, the trial judge concluded:
The Court is now of the opinion, from personal observation, attempted conversation with Mrs. Greenfield ... that Mrs. Greenfield's mental condition is such that she is completely out of touch with her surroundings ... there will be little difference to Mrs. Greenfield as to whether she is in a condominium or in a good nursing home.
On this ground, he ordered the transfer to take place. Mrs. Bergman appeals[3] and we reverse.
Without the necessity of resorting to cliches either about one's castle or the alleged "warehousing" of the elderly, it is plainly "one of the humane ideals which form the basis of our entire legal system," Public Health Trust v. Brown, 388 So.2d 1084, 1086 (Fla. 3d DCA 1980), rev. denied, 399 So.2d 1140 (Fla. 1981), that one has the presumptive right to live and remain in his or her own home, however modest, rather than in an institution, no matter how benign. As this is the rule of life, it is of course the rule of law. A long series of cases have stressed that, since a basic issue of freedom itself is involved, the most nonrestrictive mode of treatment practicable must be adopted and even the most obviously mentally ill person
who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends should never be hospitalized involuntarily.
In re Beverly, 342 So.2d 481, 487 (Fla. 1977); In re Smith, 342 So.2d 491 (Fla. 1977); C.N. v. State, 433 So.2d 661 (Fla. 3d DCA 1983). In Reigosa v. State, 362 So.2d 714 (Fla. 3d DCA 1978), this court reversed an order characterized as requiring the "draconian procedure," 362 So.2d at 715, of involuntary hospitalization when there was no showing that the patient was unable to survive outside the hospital with the care of family or friends. This case, in which it clearly appears to the contrary, even more obviously requires the same result. See generally, Lake v. Cameron, 364 F.2d 657 (D.C. Cir.1966) (reversing commitment to hospital of woman suffering from senile brain disease and remanding for consideration of less restrictive courses of treatment extensively discussed at 364 F.2d 660-61, nn. 5-14).
Serns attempts to distinguish these decisions on the ground that they involve involuntary hospitalizations under the Baker Act, see Sec. 394.467(1)(b), Fla. Stat. (Supp. 1982), or similar procedures, rather than a guardianship such as this. We think, however, that the differences work directly to the opposite of his contentions and the ruling below. Unlike those proceedings, in which the interests of the public and the state, which is a party to them, are directly involved, the only real concern of the probate court is for the best interests of the ward. In the present situation, when there is no medical indication that the incompetent should be institutionalized for care or treatment she is not receiving at home  and a showing that the transfer will indeed have adverse effects upon her  the only *133 thing to be said in favor of institutionalization is that it is less expensive.
Since, however, it is, after all, either Mrs. Greenfield's own money or an obligation properly to support her which is now at stake,[4] see Guardianship of Ivarsson, 60 Wash.2d 733, 375 P.2d 509, 510 (1975), an order which unnecessarily takes her from her own home in order either to enrich her heirs or relieve her son of that obligation simply cannot be said to serve her "best interests." The legislature has reflected just these considerations by mandating in Sec. 744.361(3), Fla. Stat. (1981) that
In case of an adult ward, the guardian shall honor the ward's preferences as to place and standard of living, either as had been expressed or demonstrated by the ward prior to the determination of his incompetency, or as currently expressed by the ward, insofar as such a request is reasonable. Such preference should be compatible with the ward's present resources and place and standard of living prior to the determination of his incompetency and shall be subject to review by the court. [e.s.]
This provision explicitly embodies the principle, which we have already expressed, that, insofar as possible, the ward should be permitted to remain in her home.
There is no doubt that the order before us is completely contrary to these basic decisional and statutory rules. The finding, based only on the trial judge's manifestly inexpert observations that "there will be little difference to Mrs. Greenfield" whether she is in her own or in a nursing home is unsupported by any competent and substantial evidence  all the evidence is otherwise. More important, such a conclusion, even if justified by the record, cannot support an order requiring institutionalization. As a matter of law, a person's home and an institution are not equally advantageous to his or her well-being. Unless it is economically infeasible or there is a good reason relating to the incompetent's welfare for determining otherwise, the ward should be permitted to live out a life which has so preciously little fulfillment left in the familiar surroundings of the place he or she knows best and surely, though perhaps inarticulately, loves.
For these reasons, the order below is reversed and the cause remanded with directions to deny the motion to transfer.[5]
Reversed.
HUBBART, Judge (dissenting).
I entirely agree with the court that this case represents an agonizing modern tragedy which has been greatly exacerbated by the bitter court battles waged in this case between Mrs. Greenfield's adult children. I cannot agree with the court, however, that the trial court abused its discretion in entering the order under review, an order from which Mrs. Greenfield's guardian has taken no appeal. I would affirm the order appealed from in all respects, as it is supported by substantial, competent evidence in this record.

I
The controlling law is well-settled that under the Florida Guardianship Law [Ch. 744, Fla. Stat. (1981)], the circuit court has broad discretionary powers over decisions made by a guardian for his ward, including those relating to the ward's residence. Section 744.361, Florida Statutes (1981) provides that a guardian's selection of a place of residence for his incompetent ward "shall be subject to review by the [circuit] court;" and upon the guardian's petition for "[a]ny change of care, maintenance or treatment" for his ward, "[t]he [circuit] court shall enter such orders, with or without notice to interested persons, as may be proper." § 744.371, Fla. Stat. (1981); see also § 744.102(15), Fla. Stat. (1981). These statutes invest the circuit court with wide *134 discretionary authority when ruling upon guardianship matters, such as the place of a ward's residence, which decisions may not be reversed upon appeal unless a showing of an abuse of discretion is clearly demonstrated. See In re Nusbaum's Guardianship, 152 Fla. 31, 10 So.2d 661 (1942); Carroll v. Carroll, 127 Fla. 226, 172 So. 916 (1937); Ahlman v. Wolf, 413 So.2d 787 (Fla. 3d DCA 1982); Clayton v. Clayton, 275 So.2d 588, 589 (Fla. 1st DCA 1973). An abuse of discretion, in turn, has been classically defined in the leading case of Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), as follows:
"Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion."

Canakaris v. Canakaris, supra at 1203, quoting Delno v. Market Street Railway, 124 F.2d 965, 967 (9th Cir.1942).

II
In the instant case, a petition for a change of residence for the incompetent ward Mrs. Greenfield was filed by Mrs. Greenfield's son David Serns. This petition was acquiesced in by Edward Golden, Mrs. Greenfield's court-appointed guardian, and was opposed only by Mrs. Greenfield's daughter Carol Bergman. The circuit court, therefore, had the authority to rule on this petition as if it had been filed by the guardian himself. See §§ 744.361, 744.371, Fla. Stat. (1981). The order which was later entered by the court on this petition is, then, clothed with a presumption of correctness and cannot be overturned on appeal unless a showing of an abuse of discretion is clearly demonstrated on this record. No such showing has been made, as the order under review is supported by substantial, competent evidence.

A
First, the record is clear that Mrs. Greenfield is suffering from Alzheimer's disease which has left her in a devastated mental and physical condition, a condition which promises only to grow worse. Dr. Lyle B. Kunz, the court-appointed psychiatrist in this case, described Mrs. Greenfield's condition in his report to the court as follows:
"Pursuant to your recent order of appointment regarding the guardianship of the above-named 81 year old widow, I examined her at her residence, Apt. 506, Maison Grande, 6039 Collins Avenue, Miami Beach, Florida, on December 21, 1982.
She was alert and ambulatory and in a condition quite similar to that found in my previous examination of her on August 4, 1981. She was disoriented to time and place, could not sustain a coherent conversation. She used words and talked and showed considerable emotion, all quite inappropriately. She could not answer questions relevantly, and would give a no answer to a question one minute and the next would give a `yes' answer to the same question. She saw imaginary people about the apartment and called to them at times. In short, she showed characteristics completely compatible with Alzheimer's disease, a primary, progressive degeneration of the brain, which renders her unable to be responsible for herself or her affairs and in need of total dependent care. Though fully mobile she is unable to dress herself adequately, feed herself, or take care of her personal hygiene." A.17
Moreover, the trial court fully confirmed these findings by personally observing Mrs. Greenfield in court. Mrs. Greenfield has no expressed preference as to where she should live as she is disoriented as to time and place. Indeed, no one on this appeal questions Mrs. Greenfield's mental incompetency and no one has ever taken an appeal from the order of mental incompetency previously entered in this case.
Second, the record is clear that the Miami Jewish Home for the Aged, the nursing *135 home in this case, is an exemplary nursing home with superior medical facilities and treatment services capable of giving first-rate medical attention and treatment to Mrs. Greenfield. The court in its opinion quite accurately states what the record clearly demonstrates, namely, that this nursing home is "a model facility of its type." [p. 131, n. 2]. Dr. Kunz in his report to the court describes this nursing home as follows:
"[T]he Miami Jewish Home for the Aged is not an average facility. It certainly has superior equipment and trained personnel capable of providing very high level care for all stages of the basic disease process from which Mrs. Greenfield is suffering." A.17
Third, the record tends to indicate that Mrs. Greenfield would be better cared for in the long run by the Miami Jewish Home for the Aged, rather than by a single private nurse at home. Dr. Kunz in his report to the court so concluded as follows:
"In summary this is an 81 year old white widow with progressive Alzheimer's disease; she may well remain in her present state for some years yet. On the issue of her well-being in the apartment as compared to the Miami Jewish Home for the Aged, I would say that her shortrun well-being is best served by remaining in the apartment but that in the long-run she is likely to be better off in the Home for the Aged." A.17
Given this showing, I think it far from unreasonable, fanciful, or arbitrary [and therefore no abuse of discretion] for the trial court to conclude, as it did, that Mrs. Greenfield's long-range, best interests would be served if she resided in a first class nursing home  the Miami Jewish Home for the Aged  where she will be given superior medical attention for her devastated physical and mental condition. Mrs. Greenfield, sadly, is in a completely disoriented state; she is utterly unaware of where she is and unsurprisingly has no expressed preference as to where she should live. She is incontinent; she is dysfunctional; she is largely incoherent; and she needs round-the-clock medical treatment. Surely, it cannot be said that no reasonable person could have concluded, as the trial court did, that Mrs. Greenfield would be better cared for by the Miami Jewish Home for the Aged, rather than by a single private nurse at Mrs. Greenfield's home where she resides alone. At the very least, this is a question over which reasonable people may differ and therefore the order under review cannot be an abuse of discretion under the established law of this state.
Beyond that, it should be noted that the order under review has been acquiesced in by Edward Golden, Mrs. Greenfield's court-appointed guardian, who has taken no appeal therefrom. This is not a case, then, where the ward's guardian is protesting the court's decision as to his guardian's place of residence; indeed, his ward has no expressed preference in the matter. Only Mrs. Greenfield's daughter Carol Bergman objects and has taken the appeal in the case as a "next friend." I am frankly dubious whether she has any standing to take this appeal, but, even if she does, I am loath to upset this order at her behest given the state of this record, given the fact that the ward's guardian has taken no appeal from the order, and given the fact that Mrs. Bergman has been removed as Mrs. Greenfield's guardian by the trial court for failing to represent the best interests of her mother.

B
I recognize the force of the court's abstract argument that we should presumptively prefer the home of the incompetent ward as the place where the ward should ordinarily reside  although I question the court's wholesale enlistment of Baker Act cases to reach that result. Moreover, I entirely agree that both the guardian and the court should presumptively prefer a ward's expressed wishes to remain in her home as her place of residence. See § 744.361(3), Fla. Stat. (1981). In the instant case, however, Mrs. Greenfield has no expressed preference as to where she *136 should live, given her devastated physical and mental condition; moreover, there are good and sufficient reasons, as previously indicated, that she would be better cared for in the long run by the Miami Jewish Home for the Aged. Whatever presumption in favor of the ward's home may exist, this presumption was more than overcome by the evidence adduced below in this record.
I know it is always sad to remove an ailing, elderly, incompetent ward from her home to a nursing home, even a first-rate one. Still, there comes a time when that soul-wrenching decision must be made as it is in the long-range best interests of the incompetent ward. I think it is not unreasonable, and therefore no abuse of discretion, for the trial court to conclude, as it did, that this is one of those cases.
I would affirm.
NOTES
[1] The existence, propriety and extent of this obligation  which was initially based on the temporary resolution of a dispute as to whether Serns had been the recipient of a conveyance of Mrs. Greenfield's assets which was invalid or, alternatively, had agreed to provide for her care in return for that conveyance  is the subject of continuing litigation below and is not before us. We note only that there is no present issue concerning the adequacy of the ward's assets  from whatever source  to provide for the more expensive care required in her home.
[2] It is conceded that the home in question is in all respects a model facility of its type.
[3] Since Mrs. Greenfield's guardian (appointed by the court after the bitter dispute between her children made it obviously impossible for either to serve in that capacity) has chosen to take no formal position concerning this order, we have, by denying Serns' motion to dismiss this appeal, recognized Mrs. Bergman's standing to challenge it as her mother's, as it were, "next friend." Hunt v. Hunt, 56 Tenn. App. 683, 412 S.W.2d 7 (1965), cert. denied (Tenn. 1966); Guardianship of Ivarsson, 60 Wash.2d 733, 375 P.2d 509 (1962); Annot., Right of guardian ad litem or next friend to institute or appear in litigation, or in court, other than that in which he was appointed, 115 A.L.R. 571 (1938), and cases cited.

We might add that Mrs. Bergman has at least as much right to seek review of the order as Mr. Serns had to secure it.
[4] See note 1, supra.
[5] This disposition is without prejudice to later reconsideration if Mrs. Greenfield's condition or economic necessities, see note 1, supra, require it.