19 F.3d 27
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Anthony GRANT, Plaintiff-Appellant,
v.
CITY OF LOS ANGELES; Larry Maillet; W.F. Casey; Rudy
Vidal; Harold Moberly; Brian O'Hara; Douglas
Roller; John Hall, Defendants-Appellees.
 No. 92-55820.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 10, 1993.
Decided Feb. 15, 1994.
 
 Before: ALDISERT,* HUG and SCHROEDER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Anthony Grant appeals the district court's judgment following a bench trial in favor of the City of Los Angeles and several of its police officers on charges of police brutality brought under 42 U.S.C. Sec. 1983 and arising from his arrest for car-jacking. Both in his brief and at oral argument, Appellant Grant has limited the scope of our inquiry to the primary issue before us, whether the district court abused its discretion in ordering a bench trial after the parties failed to respect its pre-trial order that they furnish the court with a "clean" set of proposed jury instructions and a form of special verdict one week prior to trial.
 
 I.
 
 3
 The district court's pre-trial order dated January 3, 1993, provided in relevant part:
 
 
 4
 Counsel note this court's standard order (contained in the post-status conference order) regarding preparation and submission of jury instructions. Failure timely to serve and file jury instructions (and form of special verdict if required below) will be deemed a waiver of jury trial by the parties so failing.
 
 
 5
 The matter will be submitted to the jury on a form of special verdict. The parties are to attempt to agree on a form of special verdict and are to submit the agreed form, or each party's proposed form in the event of non-agreement, with the jury instructions.
 
 
 6
 E.R. at 46. A special verdict form was ordered because of the large number of defendants in the case and the listing of qualified immunity as a defense in the pre-trial conference order. Id. at 52.
 
 
 7
 After both Appellant and Appellees failed to observe the deadline, the court noted that their noncompliance had seriously inconvenienced it and obstructed it in its trial preparation. The practice of the district court was to provide the jury with a copy of the proposed instructions and form of special verdict prior to trial. The court told the parties that time was of the essence in order for it to review the submissions before trial. Because the parties failed to comply with the court's pre-trial order, causing delay and prejudice to the efficient administration of justice, the court determined that it had no alternative but to invoke its previously announced sanction--jury trial waiver. It considered, but declined to accept, Appellant's suggestion that it sanction counsel rather than deny him a jury trial.
 
 
 8
 The court noted that although Grant timely demanded a jury trial and timely submitted a set of jury instructions, the proposed instructions were not "clean," that is, devoid of case citations for distribution to the jury. Additionally, Grant failed to adhere to the deadline for submission of a special verdict form, producing it on the day of trial, seven days late. Nevertheless, Grant insists that he substantially complied with the district court's order and that, in any case, the court could have imposed a less severe penalty for violation of its order, such as monetary sanctions against his counsel.
 
 
 9
 With the case in this posture, it is important to emphasize what is not before us. Because Appellant has confined our inquiry to whether the district court abused its discretion, Brief for Appellant at 11, we will not review de novo the validity of the sanction itself. See, e.g., White v. McGinnis, 903 F.2d 699 (9th Cir.) (en banc), cert. denied, 498 U.S. 903 (1990). Appellant challenges only the application of the sanction under the circumstances presented. Moreover, because both parties violated the order, we are not confronted with a jury waiver sanction affecting an innocent party. With the issue so narrowly joined, our inquiry is extremely limited:
 
 
 10
 Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man [or woman] would take the view adopted by the trial court. If reasonable men [or women] could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.
 
 
 11
 Delno v. Market St. Ry. Co., 124 F.2d 965, 967 (9th Cir.1942).
 
 II.
 
 12
 We find no abuse here. First, because the court provided all parties with adequate notice that noncompliance with its order would be deemed a waiver of jury trial, we are not faced with the circumstances present in Pradier v. Elespuru, 641 F.2d 808, 811 (9th Cir.1981) ("The local rule does not say that the failure to [comply] ... invalidates the demand.") or Lawson v. Kolender, 658 F.2d 1362, 1372 (9th Cir.1981) ("Lawson's right to a jury trial should not have been denied where he had no warning of this severe sanction"). Second, the court in this case furnished a reasonable explanation for requiring the instructions and special verdict form one week before trial, stating that it needed to examine the submissions in advance so that there would be no delay in starting the trial. It noted that the failure of the parties to adhere to the deadline seriously hampered its efforts to administer justice. This particular judge's preference to distribute the jury instructions and special verdict form before trial is not to be criticized.
 
 
 13
 Under these circumstances, we conclude that the district court did not abuse its discretion in doing what it expressly informed Grant it would do in the event that its pre-trial order was not respected.
 
 III.
 
 14
 Appellant argues also that the court's judgment in favor of individual police officers and the City was not supported by the evidence. We disagree.
 
 
 15
 Grant is a convicted car-jacker who brings a Section 1983 action alleging police brutality during his arrest. He and his companion, Peter Lomar, stole an automobile at gunpoint on August 31, 1989. Police officers received a dispatch call notifying them of the crime and warning them that the two suspects should be considered "armed and dangerous." The officers located the stolen automobile and followed it with flashing lights and blaring sirens. A high-speed chase ensued, largely through residential neighborhoods. The pursuit ended when the stolen automobile crashed into a street sign.
 
 
 16
 By the time the first police car arrived on the scene, the doors of the stolen automobile were ajar, and the suspects missing. Backup police units soon arrived, and a multiple-team search of the area was conducted. Each search team had a police dog, each dog had a handler. The dogs were trained to search a designated area for a suspect and, upon locating that suspect, to bite him or her unless the handler commanded the dog not to bite. According to the police, all dogs were trained to stop biting a suspect instantly on command.
 
 
 17
 Although there is some dispute as to the exact location, one of the search teams found Grant hiding behind a tree near a six-foot high wall in a residential backyard. According to the police, the officers on the scene ordered him to come out from behind the tree with his hands up. He emerged from behind the tree and attempted to escape by climbing the wall. A dog handled by Officer Roller, which had already been released to search for the suspects, caught the fleeing Grant before he reached the top of the wall, biting him on the leg. Grant fell to the ground and briefly struggled with the dog, at which point the dog bit him a second time on the upper arm. Officers testified that the dog was called off within five seconds. Grant was then handcuffed and escorted to a police car. At no point, insist the officers, did anyone strike him or allow the dog to bite him after he had ceased to pose a threat.
 
 
 18
 Appellant alleges that the police officers found him hiding and, without warning, allowed the dog to bite him repeatedly. He further states that the officers beat him with their flashlights, and possibly batons, while shouting racial slurs. He sustained two dog bites, one to the upper arm and the second to the upper leg. He also broke two small bones, the fibulae, a few inches above each ankle.
 
 
 19
 The district court concluded that the dog bites did not constitute unconstitutionally excessive force in light of the circumstances, namely, the apprehension of a suspect in a violent felony involving a deadly weapon, who had just led the police on a dangerous high-speed chase and who resisted arrest by attempting to flee into a residential neighborhood on foot.
 
 
 20
 We will not challenge the factual findings of the district court unless clearly erroneous. Fed.R.Civ.P. 52(a); Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989). Under this standard, we will accept the factual determinations of the district court unless they "either (1) [are] completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bear[ ] no rational relationship to the supportive evidentiary data." Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir.1972).
 
 
 21
 The district court did not find Grant's story credible. He had stolen a car at gunpoint and led the police on a dangerous high-speed chase through densely populated neighborhoods. Once cornered, he attempted to escape. Once caught, he lied about his name. He lied twice more at booking and when hospitalized.
 
 
 22
 In contrast, the district court found the testimony of the police officers believable, determining that it was unlikely that officers would beat Grant in front of other officers from different divisions. The court concluded that the events described by the officers were more plausible than those portrayed by Grant.
 
 
 23
 To support his contentions, Grant emphasizes the testimony of expert witness Dr. James Styner, who testified that the breaks in Grant's fibulae were consistent with direct lateral blows caused by objects such as flashlights or batons, but were inconsistent with a vertical trauma such as a fall from a high wall. In Dr. Styner's opinion, Grant's bones were broken at some point after he fell from the six-foot wall, but not during the fall itself. Although the district court considered this evidence, it found that the breaks did not result from blows by the police officers, but rather from the impact of the car crash or, alternatively, from Grant's fall from the wall as he was attempting to flee from the officers.
 
 
 24
 Viewing the record in its entirety, and giving due weight to the district court's unique ability to evaluate the credibility of witnesses, we conclude that there was ample evidence to support the court's finding that Appellant's injuries were caused by a trauma other than the alleged blows inflicted by officers on the scene.
 
 IV.
 
 25
 Appellant's final contention is that the district court erred by failing to clarify whether the police officers were exonerated on qualified immunity grounds, that is, that they acted in good-faith reliance on an official municipal policy, or on the ground that no constitutional violation occurred. Under Monell v. Dept. of Social Serv. of New York, 436 U.S. 658 (1978), contends Appellant, the City could have been held liable for improper training of the officers notwithstanding the exoneration of the officers themselves if they had been exonerated on qualified immunity grounds. In order for liability to attach under Monell, a plaintiff must prove that the municipality caused in some meaningful sense the alleged constitutional harm through some official policy. Id. at 690.
 
 
 26
 The problem with Appellant's position is that the district court clearly did not rest its judgment on qualified immunity grounds. Rather, it unequivocally held that there was no constitutional violation: "The court concludes that the force used in making the arrest was not 'excessive', and that therefore no constitutional violation occurred." E.R. at 59.
 
 
 27
 Once the court determines that no constitutional violation occurred, the City can not be liable under Monell. A finding that officers inflicted no constitutional injury on a plaintiff in a Section 1983 action is not only conclusive as to the officers, but also as to the city and its police commission. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). As the Court noted:
 
 
 28
 If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.
 
 
 29
 Id. We agree that "absent any constitutional violations by the individual defendants, there can be no Monell liability." Palmerin v. City of Riverside, 794 F.2d 1409, 1414 (9th Cir.1986) (citing Sanchez v. City of Riverside, 596 F.Supp. 193, 195 n. 3 (C.D.Cal.1984)).
 
 V.
 
 30
 We have considered all questions raised by Appellant. To the extent not discussed herein, any other contentions have been considered and rejected.
 
 
 31
 AFFIRMED.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3