Charles Leroy **ALSAGER,** Sr., and Darlene Lauvern Alsager, Plaintiffs,

v.

**DISTRICT COURT OF POLK COUNTY, IOWA, (JUVENILE DIVISION), et al., Defendants.**

No. 73-79-2.

United States District Court,
S. D. Iowa,
Central Division.

Nov. 12, 1974.

Gordon E. Allen, Iowa Civil Liberties Union, Des Moines, Iowa, and Rena K. Uviller, Melvin L. Wulf and Burt Neuborne, Juvenile Rights Project, American Civil Liberties Union, New York City, for plaintiffs.

Ray A. Fenton, County Atty., and Harold A. Young, Asst. County Atty., Polk County, Des Moines, Iowa, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

HANSON, District Judge.

This cause of action was brought by a married couple, Charles and Darlene Alsager, who allege that their constitutional rights were violated by state court proceedings which resulted in the termination of their parental relationship as to five of their six children. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).

The plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 to the effect that the termination proceedings conducted in the Polk County District Court were unconstitutional. While the plaintiffs directly attack the constitutionality of the Iowa statutory provisions which authorized the termination hearing, they have purposely avoided seeking to enjoin the enforcement of the state statute.

## FINDINGS OF FACT

Charles and Darlene Alsager were residing at 614 East 30th Street, Des Moines, Iowa, in the summer of 1969. At that time Mr. Alsager was 36 years old, and Mrs. Alsager was 26 years old. The couple had been married eleven years and were the parents of six children: George, who was 10 in June of 1969; Wanda, who was 8; John, age 7; Charles, Jr., age 6; Michael, age 4; and Albert, who was less than one year old.

The Alsagers began to have contact with the juvenile authorities of the Polk County District Court as early as 1965, when George was adjudicated to be a "neglected child." This adjudication prompted a removal of George from his parents' home, and he was placed in at least two foster homes before he was returned to his parents in 1968.

In the spring and early summer of 1969, the probation department of the Polk County District Court received a number of complaints about the Alsager children from the family's neighbors. On June 13, 1969, Carl Parks, the Chief Probation Officer of the Polk County District Court, wrote a letter to the plaintiffs stating that his office had received a report about their children, and warning the parents that a petition might be filed by the neighbors seeking to remove the children from their custody.

On June 20, 1969, Jane Johnston, a probation officer with the Polk County Juvenile Court, visited the Alsager home. Miss Johnston spent approximately twenty minutes inside the Alsager residence, which at the time was occupied only by Mrs. Alsager and the baby, Albert. Based on her observations inside the house, and without seeing the other five children, Miss Johnston determined that all six children should immediately be removed to the Polk County Juvenile Home. This removal was to be temporary, pending a hearing to determine whether the children were "neglected" as defined by Section 232.2(15) of the Code of Iowa (1973). This hearing was held within one week from the initial removal, on June 26, 1969. As a result of the hearing, Polk County District Judge Don L. Tidrick found the children to be neglected, and ordered that they remain in the custody of the county court pending placement in a foster home or an institution.

Less than one month after the neglect ruling, Chief Probation Officer Parks filed a petition to institute proceedings to terminate the parent-child relationship in Polk County District Court.

This petition alleged that

the best interests of the children . . . require that the parent-child relationships . . . be terminated by the Court because said parents have substantially and continuously and repeatedly refused to give their children necessary parental care and protection and because said parents are unfit parents by reason of conduct detrimental to the physical or mental health or morals of their children.

Upon a filing of the petition, a guardian ad litem was appointed in behalf of the children. A copy of the petition was served upon the parents, who then retained counsel. On September 9, 1969, a termination hearing was held before Judge Tidrick. The parents were present at this hearing, accompanied by their counsel. The children's guardian ad litem was also present. On September 29, 1969, Judge Tidrick issued an order pertaining to the termination hearing. The judge stated that "adequate and sufficient cause" existed to terminate the parent-child relationship, but he declined to do so at that time, stating that "final termination of parental rights

should not take place so long as there is any substantial hope that the parents will be able to improve to the extent that they can provide even minimal care." The order then continued the matter of termination of the parental rights. The two eldest children, George and Wanda, were released to the temporary custody of their parents. The four youngest children were ordered to remain in the custody of the court.

The court held a second hearing on the matter of termination on March 19, 1970. One week prior to this hearing the attorney who represented Charles and Darlene Alsager at the September proceedings was appointed to represent them at the March hearing. A final hearing on termination was held on May 22, 1970. On that day, Judge Tidrick issued his final termination order. He ruled that Wanda, who had been returned to her parents in September, would benefit by remaining in her parents' home. The Alsagers' parental rights "in and to" the other five children were terminated. This order of termination was affirmed by the Iowa Supreme Court on October 18, 1972, in a short opinion. *See* State v. Alsager, 201 N. W.2d 727 (Iowa 1972). No further proceedings were commenced on the state level subsequent to the decision of the Iowa Supreme Court. This lawsuit was instituted on March 28, 1973. Evidence was presented to the Court at a hearing on March 18, 1974. All post-trial briefs and exhibits have been submitted.

## CONCLUSIONS OF LAW

The plaintiffs have raised a number of constitutional claims under 42 U.S. C. § 1983, which reads as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The plaintiffs seek to utilize Section 1983 as a jurisdictional basis for a declaratory judgment that the Iowa parent-child termination statutes under which the state proceedings were conducted are unconstitutional. Specifically, the plaintiffs claim that the standards of § 232.41 of the Code of Iowa (1973) are vague and ill-defined, in violation of the Due Process Clause of the Fourteenth Amendment. They also assert that adequate notice of the proceedings was not given them, and that the use of hearsay evidence and the requirement of proof by a preponderance of the evidence serve to deny them Due Process. They further allege that the right to "family integrity" is protected by the First, Ninth and Fourteenth Amendments to the United States Constitution. While the plaintiffs' contentions undeniably constitute a direct attack on the Iowa termination statute and procedures, the plaintiffs have conscientiously avoided a request to enjoin the pertinent Iowa laws. They assert that absent a request for any injunctive relief pertaining to the statutes, one judge may properly declare the laws unconstitutional under 28 U.S.C. § 2201. Plaintiffs concede that if they were to seek an injunction the case would become one for a three-judge panel pursuant to 28 U.S.C. § 2281.

In addition to their request for declaratory relief, the plaintiffs request that the Court grant any equitable relief it feels necessary to effectuate a declaration recognizing the Alsagers as the natural parents of their children, and that the Court grant any damages, up to $50,000, occasioned by the wilful violation of plaintiffs' rights.

Upon a full review of the record in this case, and a consideration of the evidence presented both by way of exhibits and at the hearing held on March 18, 1974, it is the conclusion of this Court that plaintiffs' request for declaratory relief must be denied. This conclusion is based upon a number of diverse

factors, but is primarily influenced by the Court's belief that a grant of declaratory relief would be totally ineffectual given the facts of this case. In light of the Court's conclusion that declaratory relief should not be granted in this case, two major issues merit discussion: the propriety of one judge considering the case, and the merits of granting declaratory relief.

## ·THE THREE-JUDGE COURT ISSUE

Section 2281 of Title 28 of the United States Code (1970) states:

> An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

Throughout this litigation, the plaintiffs have asserted to this Court that the basic relief they seek is a declaratory judgment to the effect that the Alsager parent-child relationship was terminated in violation of the Due Process Clause.[1] It is beyond dispute that the plaintiffs have not expressly sought to enjoin the pertinent Iowa statutes. The defendants argue, however, that because plaintiffs seek to have the termination statute declared unconstitutional both on its face and as applied, that the purposes of the three-judge court statute require its application.

Plaintiffs have cited the Court numerous cases in which the mere fact that declaratory rather than injunctive relief was requested was deemed sufficient to remove the litigation from the purview of three-judge consideration. *See, e. g.*, Kennedy v. Mendoza-Martinez, 372 U.S. 144, 152–155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); Nieves v. Oswald, 477 F.2d 1109, 1115 n. 15 (2nd Cir. 1973); Merced Rosa v. Herrero, 423 F.2d 591, 593 (1st Cir. 1970). Such an approach is consistent, at least on the surface, with the view that the three-judge statute is a "technical" enactment, and should be strictly construed. Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1941). *See also*, C. Wright, Law of Federal Courts, § 50, 188–194 (1970). Nonetheless, the Supreme Court in Kennedy v. Mendoza-Martinez, *supra*, refused to hold that a plaintiff's requested relief must always control the question of whether three judges are required. As stated by the Court:

> Whether an action solely for declaratory relief would under all circumstances be inappropriate for consideration by a three-judge court we need not now decide, for it is clear that in the present case the congressional policy underlying the statute was not frustrated by trial before a single judge. The legislative history of § 2282 and of its complement, § 2281, requiring three judges to hear injunctive suits directed against federal and state legislation, respectively, indicates that these sections were enacted to prevent a single federal judge from being able to paralyze totally the operation of an entire regulatory scheme, either state or federal, by issuance of a broad injunctive order. Section 2281 "was a means of protecting the increasing body of state legislation regulating economic enterprise from invalidation by a conventional suit in equity. . . . The crux of

---

1. Their complaint seems to go beyond a request for a "noncoercive" judgment, however. It specifically seeks (1) the granting of "appropriate equitable relief *requiring* the recognition of plaintiffs as the natural parents of their children" (emphasis added), (2) appropriate equitable relief "returning custody of the petitioners ·to their natural parents," and (3) other relief as is appropriate.

the business is procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy. This was the aim of Congress . . .." 372 U.S. at 154, 83 S.Ct. at 560.

The crucial inquiry in regard to the instant litigation goes to the significance of the fact that the plaintiffs have phrased their complaint solely in terms of declaratory relief.

The Supreme Court has recently elaborated at length on the distinctive characteristics of declaratory as opposed to injunctive relief. As noted by the Court in Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), a declaratory judgment is a

much milder form of relief than an injunction. Though it may be persuasive, it is not ultimately coercive; noncompliance with it may be inappropriate, but it is not contempt. 415 U.S. at 471, 94 S.Ct. at 1221, quoting Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

■ Thus, the granting of a declaratory judgment that a state statute is unconstitutional does not prevent the state from continuing to apply the same statute after the federal determination of unconstitutionality. Perez v. Ledesma, 401 U.S. 82, 124–126, 91 S.Ct. 674 (Brennan, J., dissenting). The efficacy of the declaratory judgment most often lies in its usefulness as a means of forestalling the application of the challenged law. Cf. Steffel v. Thompson, supra,

415 U.S. at 453–458, 94 S.Ct. 1209. As stated in Travelers Insurance Co. v. Davis, 490 F.2d 536, 543 (3rd Cir. 1974), "An additional purpose (of the declaratory judgment act) is to clarify legal relationships before they have been disturbed or a party's rights violated." In the instant case, however, declaratory relief was not sought until after the challenged law had been fully applied, and the Alsager family had been physically and legally separated.

■■ The fact that the actions challenged by the Alsagers have already taken place does not render declaratory relief inappropriate, however. In Kennedy v. Mendoza-Martinez, supra, the Supreme Court sanctioned the use of a declaratory judgment in a situation where certain challenged deportation proceedings had taken place two years prior to the declaratory judgment litigation in the district court. 372 U.S. at 147–149, 83 S.Ct. 554. The Court in Mendoza-Martinez also upheld the propriety of proceeding before one judge to obtain a declaratory judgment. While this Court feels that there might be merit to the argument that three judges should be required here since the only effective relief the Alsagers could obtain would be a grant of both declaratory and injunctive relief, it is not necessary to fully explore the issue of the propriety of convening a Section 2281 court where an injunction has not been requested, because compelling reasons exist to deny declaratory relief altogether.[2]

2. Notwithstanding the plaintiffs' adamant assertions that one judge can consider this case, its facts seem to make it one which could qualify under the dictum cited in Mendoza-Martinez, supra, as a declaratory judgment case which requires three judges. This would be true, however, only upon a decision to grant declaratory relief.

The evidence offered in this case indicates that the defendants acted in compliance with the state statutes. See infra. Because a mere declaration of unconstitutionality would leave the legislative scheme intact, the termination process could repeat itself endlessly (if the family could first be reassembled). It is thus apparent that the only meaningful

relief for these plaintiffs would lie in combined declaratory and injunctive relief—matters for a three-judge court.

Further, even if repetitious litigation did not occur, it does not follow that one judge could rule. Again, the compliance of the defendants with the state statute is the key consideration. Voluntary adherence by the State of Iowa to a declaratory judgment issued in favor of the Alsagers could have the precise statewide effect of an injunction. See Mitchell v. Donovan, 398 U.S. 427, 433, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970) (Black, J., dissenting). The statute would simply be rendered nugatory voluntarily, rather than by the "coercion" of a court order. Given

■ Since no issue of needing an injunction to enforce the declaratory judgment will be triggered by denying declaratory relief, the case is clearly a proper one for a single judge. Steffel v. Thompson, 415 U.S. 452, 457 n. 7, 94 S.Ct. 1209 (1974); Wright, Federal Courts, § 50 at 190 (2d ed. 1970).

## THE PROPRIETY OF GRANTING DECLARATORY RELIEF

Section 2201 of Title 28 of the United States Code reads as follows:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

■ It is beyond dispute that the decision of whether to grant declaratory relief lies in the discretion of the trial judge. As stated by the United States Supreme Court:

> The declaratory judgment procedure may be resorted to only in the sound discretion of the Court and where the interests of justice will be advanced and an adequate and effective judgment may be rendered. Federation of Labor v. McAdory, 325 U.S. 450, 462, 65 S.Ct. 1384, 1390, 89 L.Ed. 1725 (1945).

See also Public Affairs Press v. Rickover, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed. 2d 604 (1962); Public Service Commission v. Wycoff Co., 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952); Brillhart v. Excess Insurance Co., 316 U.S. 491, 499, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) (Douglas, J., concurring).

It is the holding of this Court that the circumstances which the Alsagers find themselves in are such at to render ineffective federal declaratory relief. This conclusion has been based on the evidence presented to the Court, and the factors influencing this decision will be fully set out herein. Before addressing the evidence of the case, however, certain other considerations which dictate against granting declaratory relief merit comment.

■ This action was commenced in the United States District Court after the completion of the litigation at the state level, including an appeal to the Iowa Supreme Court. Because the constitutional issues presently urged before this Court were neither litigated nor decided on the state level, there is no barrier to their litigation here in an action under Section 1983. England v. Louisiana Board of Medical Examiners, 375 U.S. 411 (1964). Much evidence has been urged upon this Court, however, in an apparent invitation that it engage in a reconsideration of factual matters previously determined in the three termination hearings before the Polk County District Court. This invitation must be declined. As stated by the United States Court of Appeals for the Third Circuit,

> The (Declaratory Judgment) Act is not a substitute for an appeal from a state judgment, nor does it convey to a federal court the power to review a state court decision. Travelers Insurance Co. v. Davis, 490 F.2d 536, 544 (3rd Cir. 1974).

---

this possible impact, a federal court should have the benefit of the state's point of view before ruling. Here, only Polk County has been represented. Given the possibility of a statewide impact, considerations of comity dictate that the State should be given an opportunity to defend. Cf. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). See also Doe v. Isreal, 482 F.2d 156, 158 n. 3 (1st Cir. 1973).

Since a denial of declaratory relief would have neither of the above-hypothesized effects, no paralysis of a state statutory scheme is possible, and § 2281 would not require a three-judge court.

As one United States District Court has noted, discretion in applying the Declaratory Judgment Act

> should be exercised with proper regard for orderly federal-state judicial relationships. . . . It is well settled that the use of the declaratory judgment procedure, merely as a means to review decisions already made by the state courts is improper. Savini v. Sheriff of Nassau County, 209 F.Supp. 946, 950–951 (E.D.N.Y.1962).

The Court notes these arguments not because it is reluctant to adjudicate the Alsagers' constitutional rights, but because the great bulk of plaintiffs' efforts in this cause has been devoted to convincing the Court that the factual determinations of the state court were misinformed. Plaintiffs' two witnesses at the March 18, 1974 hearing, Dr. Kugel and Dr. Berry, devoted most of their testimony to an attack upon the wisdom of the state trial judge's decision to order the parent-child termination on May 22, 1970. The invitation is obvious: the plaintiffs want a federal judge to substitute his opinion, based on the new testimony, for that of Judge Tidrick.

█ █ The Court has serious doubts as to whether it has the requisite subject matter jurisdiction to consider the factual matters litigated before Judge Tidrick. This Court has original jurisdiction to consider the constitutional claims which the plaintiffs did not assert on the state level; it does not have appellate jurisdiction over the state court's ruling on the merits. *See* Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–416, 44 S.Ct. 149, 68 L.Ed. 362 (1923); Anderson v. Lecon Properties, Inc., 457 F.2d 929, 930 (8th Cir. 1972). In this situation, considerations of res judicata and federal subject matter jurisdiction

merge. Once the issue of the parents' suitability to raise their children had been aired in the state court, the proper channel for a reconsideration of the original decision was vertical—up to the Iowa Supreme Court. The plaintiffs cannot, in this Court, assert *de novo* factual issues pertaining to their qualifications as parents. *See* A. Vestal, State Court Judgment as Preclusive in Section 1983 Litigation in a Federal Court, 27 Oklahoma L.Rev. 185, 187–188 (1974); Tang v. Appellate Division of New York Supreme Court, 487 F.2d 138, 141–143 (2d Cir. 1973); Jenson v. Olson, 353 F.2d 825, 826 (8th Cir. 1965); Kaufman v. Somers Bd. of Educ., 368 F.Supp. 28, 36–37 (D.Conn.1973).

█ In exercising its discretion as to whether declaratory relief should be granted to the plaintiffs, this Court must show "proper regard for the prior state court judgments which have defined the legal relations between the litigants." Lutsky v. Lutsky, 310 F.Supp. 517, 520 (S.D.Fla.) aff'd, 433 F.2d 346 (5th Cir. 1970). "Courts will not countenance the use of declaratory action which would increase friction in our federal-state system." 6A Moore, Federal Practice, ¶ 5708 (2d ed. 1966).

In accordance with such principles, the evidence of this case will be considered not for the purpose of this Court's substituting its judgment for that of the state authorities, but rather to determine if the declaratory relief sought herein will be efficacious. The time for relitigating factual issues on the merits of termination has long since past.[3]

The major question which remains to be considered is whether this Court should declare the actions of the defendants to be in violation of the Alsagers' constitutional rights. It has already been noted that in order to grant such

---

3. One further bar to subject matter jurisdiction exists. The factual issues plaintiffs would have this Court reconsider are arguably within the ambit of those domestic relations matters which federal courts have consistently declined to consider on their merits. See Milligan v. Milligan, 484 F.2d 446 (8th Cir. 1973); Dotlich v. Kane, 497 F.2d 390 (8th Cir. 1974); Bilotta v. Bilotta, No. 74–1443 (8th Cir. Oct. 18, 1974). *Cf.* Lutsky v. Lutsky, 310 F.Supp. 517 (S.D.Fla.1970).

relief, the Court must determine that the "interests of justice will be advanced," and that "an adequate and effective judgment may be rendered." Federation of Labor v. McAdory, *supra*. Given the record before this Court, a declaratory judgment cannot be "adequate and effective," and hence plaintiffs' request must be denied.

The statute which the plaintiffs attack, § 232.41 of the Code of Iowa (1973), reads as follows:

When relationship changed

The court may upon petition terminate the relationship between parent and child:

1. With the written consent of parents who for good cause desire to terminate the parent-child relationship.

2. If the court finds that one or more of the following conditions exist:

a. That the parents have abandoned the child.

b. That the parents have substantially and continuously or repeatedly refused to give the child necessary parental care and protection.

c. That although financially able, the parents have substantially and continuously neglected to provide the child with necessary subsistence, education, or other care necessary for physical or mental health or morals of the child or have neglected to pay for subsistence, education, or other care of the child when legal custody is lodged with others.

d. That the parents are unfit by reason of debauchery, intoxication, habitual use of narcotic drugs, repeated lewd and lascivious behavior, or other conduct found by the court likely to be detrimental to the physical or mental health or morals of the child.

e. That following an adjudication of neglect or dependency, reasonable efforts under the direction of the court have failed to correct the conditions leading to the termination.

 The plaintiffs contend that the enactment is unconstitutional, both on its face and as it was applied to them. It is undeniable that certain portions of the statute, such as § 2(b), (c) and (d), are quite broad. Problems are created in terms of granting the requested declaratory relief, however, because the plaintiffs do not strenuously contest the defendants' assertion that the statute was followed in the state proceedings, and seemingly in good faith. Indeed, the state court record reflects the fact that the proceedings were anything but summary: Judge Tidrick expressly declined to terminate the relationship at the September hearing, waiting until May of 1970 to do so, after two additional hearings. To grant the "noncoercive" relief requested herein would do little to settle the controversy between these parties, for the statute would remain intact, and new termination proceedings could be brought at any time. Thus, a declaratory judgment would certainly not be an adequate remedy to the problem. *Cf.* Williams v. Ball, 294 F.2d 94 (2nd Cir. 1961). Further, even if the state were to adhere fully to a declaration of unconstitutionality by this Court, a serious question exists as to whether that course of action would satisfactorily solve the plaintiffs' dilemma. The problem is caused by the incongruity that the plaintiffs' own expert witnesses have testified that the best interests of two of the Alsagers' boys, John and Charles, are that they should not be returned to their natural parents.[4]

 It is the belief of this Court that if the challenged proceedings were unconstitutional, the validity of the pro-

---

4. This conclusion was premised on continued successful placement with permanent foster parents. See testimony of Doctor Kugel and Doctor Berry, Transcript of *Alsager* Proceedings for Monday, March 18, 1974.

ceedings as a whole must be suspect. The same statute was applied in the same proceedings to all the children and their parents; procedural defects as to one child are procedural defects as to all.[5] The suggestion through expert testimony that the Court return some but not all of the children to their parents illustrates explicitly the highly factual nature of the controversy the Court is faced with resolving. Such a domestic matter is simply not the province of a federal court. This is especially true in a complex situation where the children involved have been separated from their parents for over five years.[6]

The gist of the plaintiffs' arguments is that the parents are fit to raise their six children, and that if the statutory procedures utilized in 1969 and 1970 had comported with due process, the district court would have found them to be fit. If this premise is indeed true, there seems to be no barrier to the plaintiffs arguing their fitness to be parents of their own children to the appropriate state authorities. Indeed, the record indicates that some procedures must be operating on the state level to negate a ruling of termination, for the Alsagers' eldest child, George, was ordered terminated from his parents, yet testimony before this Court indicates that he is "in essence already in the home" and hence does not need to be ordered returned. With a possibility of state redress available, and in light of the highly factual nature of the remedy sought by these plaintiffs, the state avenues certainly merit exploration.

While aspects of the proceedings to which the Alsagers were subjected can only be viewed with great alarm by any individual even remotely attuned to con-

temporary thought, a federal judge operating within the boundaries of our present legal system cannot simply undo the effects of five years of a family's separation with the stroke of his pen. Briefly stated, the factual intricacies of the Alsager family's situation are so complex as to render a declaratory judgment as to the May 22, 1970 termination both inadequate and ineffective.

Accordingly, it is ordered that the plaintiffs' request for declaratory relief is hereby denied.

It is further ordered that the foregoing shall constitute the Findings of Fact, Conclusions of Law, and Order for Judgment in this case in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

---

5. Plaintiffs challenge § 232.46 as well as § 232.41. The former prescribes the standard of proof by a preponderance of the evidence as the governing standard for termination proceedings.

6. In addition to the lack of a clearcut solution to the plaintiffs' dilemma, their cause is

hurt by the fact that much of the asserted damage is speculative, or at best tentative. For example, expert evaluations of the ability of the Alsagers to care for their children in 1969 were made on assumptions as to the availability of outside community services which may or may not have existed at that time.