Charles LeRoy ALSAGER, Sr. and Darlene Lauvern Alsager, Appellants,

v.

DISTRICT COURT OF POLK COUNTY, IOWA (JUVENILE DIVISION), et al., Appellees.

No. 75–1063.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1975.

Decided June 17, 1975.

---

Burt Neuborne, Juvenile Rights Project, American Civil Liberties Union Foundation, New York City, for appellants.

Harold A. Young, Des Moines, Iowa, for appellees.

Before LAY, ROSS and WEBSTER, Circuit Judges.

ROSS, Circuit Judge.

Charles LeRoy Alsager, Sr., and his wife Darlene brought this civil rights action in the district court under 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3), seeking a declaratory judgment that their constitutional rights were violated by state court proceedings which resulted in the termination of their parental relationship with five of their six children. Specifically under attack for vagueness is Iowa Code Ann. § 232.41 (1973) which provides that under certain conditions the state court may terminate the parent-child relationship.[1] It is also asserted that the Alsagers were denied due process of law both procedurally and substantively in the Iowa courts.

The federal district court held a trial on the merits, receiving evidence both in the form of expert testimony and in the form of affidavits. Additionally, the entire state court transcript and all pertinent records were lodged with the district court. However, without reaching the merits of the constitutional claims, the district judge denied the Alsagers' request for declaratory relief primarily because he felt that such relief would be ineffective. *Alsager v. District Court,* 384 F.Supp. 643, 652 (S.D.Iowa 1974). We reverse and remand for further proceedings.

The facts relevant to the disposition of this appeal are undisputed. In the late 1960's the Alsagers were having difficulty raising their children. Their family in 1969, when the state court proceedings commenced, consisted of George, age 10; Wanda, age 8; John, age 7; Charles, Jr., age 6; Michael, age 4; and Albert, less than one year old. In June of that year, after receiving complaints from neighbors, a probation officer from the Polk County, Iowa, Juvenile Court visited the Alsager home and determined after a brief stay that all six children should be removed immediately. This was done with no prior notice to the Alsagers. Within a week a hearing was held, the result of which was that Polk County District Judge Don L. Tidrick found that the children were "neglected" as defined in Iowa Code Ann. § 232.2(15) (1973) and

---

1. Iowa Code Ann. § 232.41 (1973) reads in part as follows:

    The court may upon petition terminate the relationship between parent and child:

    \* \* \* \* \* \*

    2. If the court finds that one or more of the following conditions exist:

    a. That the parents have abandoned the child.

    b. That the parents have substantially and continuously or repeatedly refused to give the child necessary parental care and protection.

    c. That although financially able, the parents have substantially and continuously neglected to provide the child with necessary subsistence, education, or other care neces-

sary for physical or mental health or morals of the child or have neglected to pay for subsistence, education, or other care of the child when legal custody is lodged with others.

d. That the parents are unfit by reasons of debauchery, intoxication, habitual use of narcotic drugs, repeated lewd and lascivious behavior, or other conduct found by the court likely to be detrimental to the physical or mental health or morals of the child.

e. That following an adjudication of neglect or dependency, reasonable efforts under the direction of the court have failed to correct the conditions leading to the termination.

ordered that they remain in the custody of the county court pending placement in a foster home or institution.

A short time after the neglect ruling the Chief Probation Officer filed a petition to terminate the Alsagers' parent-child relationship in the Polk County. District Court. A hearing was held before Judge Tidrick on this petition on September 9, 1969, at which the Alsagers were present with retained counsel and the children were represented by a guardian ad litem.

On September 29, 1969, Judge Tidrick issued an order pertaining to the termination petition in which he stated that he had found "adequate and sufficient cause" to terminate the parent-child relationship. However, he declined to issue a final termination order at that time. George and Wanda were released to the custody of their parents; but the four youngest children remained in the court's custody.

The matter was continued until March 19, 1970, when another hearing was held. Again the Alsagers were represented by counsel. Finally, after a third hearing on May 22, 1970, Judge Tidrick issued his final termination order. In that order he ruled that Wanda should remain with her parents but terminated the Alsagers' parental rights "in and to" the other five children. An appeal was taken to the Iowa Supreme Court which affirmed the decision on October 18, 1972. State v. Alsager, 201 N.W.2d 727 (Iowa 1972). It should be noted that no federal constitutional claims were raised before the Iowa courts.

At the time of the trial on the Alsagers' complaint in the federal district court on March 18, 1974, approximately four and one-half years had passed since the children had been removed initially. The situation was as follows: George, the oldest, had returned to his parents' home and was living there, although his legal status was unclear. Wanda, of course, was at home. Two of the remaining four had not adapted to foster homes and were considered unadoptable; while the other two were apparently living happily with foster parents, and it was thought that they might be adopted by them. All parties agreed that if these adoptions occurred, these latter two boys should not be restored to the Alsagers. The district judge found that "the factual intricacies of the . . . situation are so complex as to render a declaratory judgment as to the May 22, 1970 termination both inadequate and ineffective." Alsager v. District Court, supra, 384 F.Supp. at 652.

I.

It is well established that the Declaratory Judgment Act, 28 U.S.C. § 2201, granted the federal courts discretion "to make a declaration of rights; it did not impose a duty to do so." Public Affairs Press v. Rickover, 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962). Accord, Zemel v. Rusk, 381 U.S. 1, 19, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); Public Service Commission v. Wycoff Co., 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952). However, it is equally clear that the district court's exercise of this discretion is subject to review on appeal and that the appellate court may substitute its judgment for that of the lower court. Broadview Chemical Corp. v. Loctite Corp., 417 F.2d 998, 1000 (2d Cir. 1969), cert. denied, 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970); Sears, Roebuck & Co. v. American Mutual Liability Insurance Co., 372 F.2d 435, 438 (7th Cir. 1967); Delno v. Market Street Ry., 124 F.2d 965, 968 (9th Cir. 1942).

In determining whether or not declaratory relief would be proper in any given situation the courts have frequently followed the guidelines stated by Professor Borchard.

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to

the proceedings. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

E. Borchard, Declaratory Judgments 299 (2d ed. 1941). See Maryland Casualty Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971); Broadview Chemical Corp. v. Loctite Corp., supra, 417 F.2d at 1001; Delno v. Market Street Ry., supra, 124 F.2d at 968.

The Supreme Court, in language particularly pertinent here, has discussed the standards to be applied.

> But when all of the axioms have been exhausted, and all words of definition have been spent, the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power. While the courts should not be reluctant or niggardly in granting this relief in the cases for which it was designed, they must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, especialy [sic] in the field of public law. . . .
> Such differences of opinion or conflicts of interest must be "ripe for determination" as controversies over legal rights. The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.

Public Service Commission v. Wycoff Co., supra, 344 U.S. at 243–244, 73 S.Ct. at 240.

■ We are satisfied that these standards have been met in the instant case and hold, therefore, that the district court abused its discretion in denying declaratory relief.

There is no doubt that the conflict of interest herein is an actual controversy "ripe for determination." [2] The defendants have removed the children from the Alsager home and terminated parental rights. The Alsagers want the children back and want to resume the parent-child relationship. The Alsagers claim that this relationship was terminated by the defendants under an unconstitutional statute in an unconstitutional manner. The defendants deny this assertion of unconstitutionality. This disagreement is certainly not "nebulous or contingent"; the legal constitutional issues are clearly drawn and are set in the context of a very real controversy.

The effect of a decision on the merits can readily be seen. If the court rules against the Alsagers' contentions, it will mean that the parent-child relationship was not terminated unconstitutionally and that the state court and the county authorities will be free to decide the childrens' future with no input from the Alsagers. If the court rules in favor of the Alsagers, however, it will mean that the relationship was not legally terminated and that the Alsagers are still the parents of these children who would, as such, have a very substantial role in determining what will become of the children.

The usefulness of such a declaratory judgment is manifest, for it will "clear the air" and allow all the parties to deal with the affected children in a manner consistent with their legal relationships to them. Here this is especially important because the record reveals that these children have led harmfully unsettled lives—being shifted among numerous foster homes—due, at least in part, to the fact that the Alsagers' legal relationship to them is still in question. Once the constitutional argument is resolved it will be much easier for all the

---

2. However, see part III of this opinion.

parties to develop a permanent satisfactory solution for all the children.[3]

The district judge appears to have been concerned that declaratory relief would be inadequate and ineffective because he could not finally order a permanent disposition of all the children. We disagree. As already discussed, even if the court did not deal with each child's particular situation in its decree, a declaratory judgment regarding the constitutional claims standing alone will "terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." E. Borchard, *supra,* at 299. And it will "serve a useful purpose in clarifying and settling the legal relations in issue." *Id.* This is sufficient to warrant the granting of a declaratory judgment. The fact that some details regarding the disposition of each child would remain for the parties to work out is not a valid reason for refusing to consider declaratory relief in the context of this case.

■ Likewise, the mere fact that declaratory relief does not provide a coercive remedy is no reason to conclude that it will be ineffective. We must and do assume that the defendant state and county authorities would give full credence to a finding that the challenged Iowa statute or the proceedings thereunder were unconstitutional and would act accordingly. *Roe v. Wade,* 410 U.S. 113, 166, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Bolton,* 410 U.S. 179, 201, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

### II.

We turn now to a discussion of the "other considerations" which the district court said "dictate against granting declaratory relief." *Alsager v. District Court, supra,* 384 F.Supp. at 649.

■ First, the court dwelled upon the highly factual nature of the testimony adduced by the Alsagers and surmised that they were asking him to substitute his opinion on their fitness as parents for that of the state trial judge. *Id.* at 650. However, a careful reading of the transcript convinces us that rather, as stated by counsel in his opening statement, the Alsagers sought to establish with this evidence that there was "no evidence pursuant to which *under any constitutional permissible standard* a parent-child relationship could be severed." (Emphasis supplied.) In short, the Alsagers were willing to accept that the evidence in 1969–1970 supported the ultimate finding of parental unfitness under the Iowa standard; but their claim was that this standard itself was constitutionally defective and that the evidence would not support a finding of unfitness if a constitutional standard were utilized.

Here the Alsagers are properly in the federal court seeking to protect their federal constitutional rights even though they do not claim to have exhausted all state remedies. *Steffel v. Thompson,* 415 U.S. 452, 472–473, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). They are entitled to have the federal court find those facts necessary for a decision on their constitutional claim. *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 416–417, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). The mere fact that the state court found that the Alsagers were unfit to be parents under the Iowa standard does not oust the federal district court of subject-matter jurisdiction to adjudicate those facts necessary to resolve the claim that that state standard is unconstitutional as written and as applied.

■ Similarly, in this case the state court's findings cannot be considered for their res judicata or collateral estoppel effects because these affirmative defens-

---

3. The Alsagers admit that it might not be in the best interests of all the children to return to their home at this point, after the passage of almost six years. If it is established that they are still the legal parents, they would apparently be willing to adjust to the realities of the situation and voluntarily terminate the parent-child relationship for those children who may have become happily settled in a foster home into which they are being legally adopted. *See* Iowa Code Ann. § 232.41(1).

es were not pleaded by the defendants. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *In re Las Colinas, Inc.*, 426 F.2d 1005, 1015 n.18 (1st Cir. 1970), *cert. denied*, 405 U.S. 1067, 92 S.Ct. 1502, 31 L.Ed.2d 797 (1972); Fed.R.Civ.P. 8(c).

■ The district judge noted that declaratory judgments should not be utilized when they would increase friction in state-federal relations. *Alsager v. District Court, supra*, 384 F.Supp. at 650. However, we are not convinced that such a consideration is particularly persuasive here where there is no pending state proceeding and the state courts have not had occasion to pass on the constitutional issue. In these circumstances there will be no "duplicative legal proceedings" nor "disruption of the state criminal justice system." Federal intervention will not reflect "negatively upon the state court's ability to enforce constitutional principles." *Steffel v. Thompson, supra*, 415 U.S. at 462, 94 S.Ct. at 1217. "[T]he relevant principles of equity, comity, and federalism 'have little force in the absence of a pending state proceeding.'" *Id. (quoting Lake Carriers' Association v. MacMullan*, 406 U.S. 498, 509, 92 S.Ct. 1749, 1759, 32 L.Ed.2d 257 (1972)).

■ In a footnote the district court stated that it arguably did not have subject-matter jurisdiction because the factual issues involved are "within the ambit of those domestic relations matters which federal courts have consistently declined to consider on their merits." *Alsager v. District Court, supra*, 384 F.Supp. at 650 n.3. We believe this misconstrues the claims being made by the Alsagers. As discussed above, the Alsagers do not challenge the substantive findings under the Iowa standards. They challenge the standards themselves. And, of course, federal courts may and do entertain constitutional attacks on a state's domestic relations laws. *See, e. g., Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

■ Finally, the trial court suggested that if declaratory relief were to be granted in this case, a three-judge district court might be required under 28 U.S.C. § 2281. *Alsager v. District Court, supra*, 384 F.Supp. at 648. While there is dictum in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), from which it might be argued that three judges are required in certain situations when only declaratory relief is sought, we believe that there is little validity to such a contention in light of the many Supreme Court opinions which indicate quite clearly that the three-judge court statutes are to be applied literally and strictly to decrease the number of such panels convened. *See, e. g., Gonzalez v. Automatic Employees Credit Union*, 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974); *Hagans v. Lavine*, 415 U.S. 528, 543–545, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). *See also Wulff v. Singleton*, 508 F.2d 1211, 1215 (8th Cir. 1974).

Section 2281, of course, provides that a three-judge district court must be convened when an interlocutory or permanent *injunction* is sought. As stated in *Mitchell v. Donovan*, 398 U.S. 427, 431, 90 S.Ct. 1763, 1765, 26 L.Ed.2d 378 (1970), "[i]t would hardly be faithful to . . . a [literal] construction to read the statutory term 'injunction' as meaning 'declaratory judgment.'" (Footnote omitted.) We are satisfied that the single district judge has the authority to grant the declaratory relief requested in the instant case.

### III.

During the course of oral argument to this Court the defendants' attorney represented that the situation with regard to the Alsager children had changed again subsequent to the trial in the district court. Apparently the two boys who had been living happily in foster homes have now rejected these homes, and "all five [children] . . . are being considered for return to the Alsager home" under certain stringent condi-

tions. Discussions were started in December, 1974, leading to such a resolution, but thus far no concrete steps have been taken to return the children.

This representation raises the obvious possibility of mootness. We cannot on the record before us determine whether or not the controversy has become moot. However, we do direct the district court on remand to take the steps necessary for such a determination prior to making a decision on the merits. If the case is moot, it will be unnecessary to reach the merits of the constitutional claims.

For the foregoing reasons the judgment of the district court is reversed, and the cause is remanded for further proceedings consistent with this opinion.[4]

4. We have not considered the merits of the constitutional claims asserted by the Alsagers, and by our opinion today we do not mean to intimate any conclusion regarding them.