402 So.2d 1201 (1981)
Robert Max HAIR, Appellant/Cross-Appellee,
v.
Bonnie Peavy HAIR, Appellee/Cross-Appellant.
Nos. 80-773, 80-1400.
District Court of Appeal of Florida, Fifth District.
July 8, 1981.
Rehearing Denied August 3, 1981.
*1202 Tanya M. Plaut, Orlando, for appellant/cross-appellee.
William E. Kuntz, of Smith, Hulsey, Schwalbe & Nichols, Jacksonville, for appellee/cross-appellant.
COBB, Judge.
This is an appeal by the husband and a cross-appeal by the wife from a final judgment of dissolution terminating a nineteen-year marriage. The couple had no children. At the time of dissolution, the parties owned two residences, a condominium and a house, with a total approximate value of $260,000 and encumbered to the extent of some $126,000. The parties had joint debts of some $70,000.
The husband, who holds a degree in dentistry, now derives his income from various businesses and investments, including a controlling interest in Wymodak, Inc. The trial court found his stock interest therein to be worth $405,000. In the year and a half preceding the dissolution, the husband derived an income from Wymodak in the amount of $150,000, which represents an average annual income of $100,000. At the time of dissolution, he had not filed a federal income tax return since 1973, and was facing a potential income tax liability of $250,000. He also owned a 1976 Lincoln Continental and a 1979 Buick Riviera.
The wife, who was thirty-eight years old at the time of dissolution, had an associates degree in general studies and had worked fulltime for no salary in the husband's dental office during the earlier years of the marriage. She also had worked fulltime as a mail clerk for three years while her husband was in dental school, but has not worked in recent years.
The dissolution was bitterly contested. The husband opposed the dissolution, and demanded court-ordered counselling of the parties, which was denied. Ultimately, the trial court found the marriage to be irretrievably broken.
In its final judgment of dissolution, the trial court awarded the wife $1,300 per month rehabilitative alimony for a period of four years. The trial court also awarded the wife as lump-sum alimony the husband's interest in the house and condominium. However, the wife became liable for the total indebtedness on both. The husband was further required to transfer title of the Buick Riviera to the wife and the wife became responsible for all the payments subsequent to the transfer. Each party was permitted to retain his or her personal property, clothing, jewelry, etc. The husband was permitted to retain all his interest in Wymodak, Inc. The husband was made solely responsible for the $70,000 in joint debts. He was also made solely liable for the first $150,000 of liability for the taxes that were not paid during the years of the marriage.
The original final judgment directed the husband to pay the wife's reasonable attorney's *1203 fees and costs in an amount to be determined upon subsequent hearing. This provision was modified in that the husband was directed to pay the wife's costs, expenses, and attorney's fees that she was required to expend in connection with her efforts to compel the husband to provide discovery. The court also reserved jurisdiction to determine the wife's right to reasonable attorney's fees and costs for all other aspects of the divorce proceeding. The trial court heard evidence and testimony of the wife's costs and attorney's fees; it thereafter ordered the husband to pay $10,000 towards the wife's attorney's fees and $2,877.92 towards the costs incurred by her. Both parties appeal the final judgment of dissolution.
We find no merit in the issues raised by the appellant husband. First, it was within the sound discretion of the trial court to deny the husband's motion for marriage counselling. See § 61.052, Fla. Stat. (1979). Second, there was competent and credible evidence to support the trial court's finding in regard to the value of the Wymodak stock. Third, it was within the discretion of the trial court in attempting "to do equity and justice between the parties" to order the husband to pay the first $150,000 of tax liability for his previous years of non-filing. See § 61.08, Fla. Stat. (1979); Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Duncan v. Duncan, 379 So.2d 949 (Fla. 1980).
On her cross-appeal, the wife contends she should have been awarded permanent periodic alimony instead of rehabilitative alimony for four years. The first question is whether or not determination as to whether periodic alimony should be rehabilitative or permanent is a question of law or a matter of discretion for the trial court. See Canakaris 382 So.2d at 1202. According to the recent case of Wagner v. Wagner, 383 So.2d 987 (Fla. 4th DCA 1980), the characterization of alimony as rehabilitative rather than permanent is a legal question and not a matter of discretion. As authority for this statement, the Fourth District cited Canakaris, but did not specify any particular page or paragraph of that opinion.
In Canakaris, the only discussion of rehabilitative alimony is found in dictum at page 1202 thereof, and reads:
... Although rehabilitative alimony is not at issue in these proceedings, it is necessary to define its purpose in order to distinguish it from permanent periodic alimony. The principle purpose of rehabilitative alimony is to establish the capacity for self support of the receiving spouse, either through the redevelopment of previous skills or provision of the training necessary to develop potential supportive skills. Reback v. Reback, 296 So.2d 541 (Fla.3d DCA 1974). Where appropriate, rehabilitative alimony may be converted to permanent periodic alimony.
In G'Sell v. G'Sell, 390 So.2d 1196 (Fla. 5th DCA 1980), this court, citing Canakaris and Reback, held that where the record was devoid of any evidence as to the wife's potential for rehabilitation (such evidence would be prior education, skills, training, or other evidence of capacity for self support), then the award of rehabilitative, as opposed to permanent, alimony was erroneous as a matter of law. In that case the wife, after a twenty-year marriage and three children, had only a seventh-grade education, and had never in her life been employed. She had no training, was afflicted with health problems, and, essentially, was unemployable. There was no property to be distributed to her; her only source of support was the alimony to be derived from her husband's job income. The trial court's award of two-year rehabilitative alimony was reversed for entry of an award of permanent alimony.
In the instant case, unlike G'Sell, the record is not devoid of evidence that the wife can be rehabilitated. An employment counselor testified at trial that she is a woman of high average intelligence with the potential of learning various skills or trades, such as secretarial or design work, dental hygiene, and computer programming, by returning to school for two to four years. Moreover, Bonnie Hair, unlike Veronica *1204 G'Sell was awarded substantial lump-sum alimony in the equity value of the house and the condominium, an approximate amount of $134,000. No children were born of this marriage to impede any economic activities of the wife outside the home, and she is still relatively young and in good health. The wife's own testimony at trial indicated intelligence and a capacity for independence and initiative.
Unlike G'Sell, we are not dealing in the instant case with a record devoid of evidence of the potential for self support nor a situation wherein the wife receives nothing from the marriage except periodic alimony. Therefore, we are not dealing with a clear question of law, as contemplated by Wagner, but with an area wherein the trial judge "possesses broad discretionary authority to do equity between the parties." Canakaris, 382 So.2d at 1202. There are various remedies at the disposal of the trial judge to accomplish this, and appellate courts must review the over-all scheme reflected by the trial court's judgment as a whole, rather than to review independent aspects thereof. Id. at 1202.
In further elucidating the formula for appellate review in such matters, the Canakaris opinion continues:
In order to properly review orders of the trial judge, appellate courts must recognize the distinction between an incorrect application of an existing rule of law and an abuse of discretion. When a trial judge fails to apply the correct legal rule, as when he refuses to terminate periodic alimony upon remarriage of the receiving spouse, the action is erroneous as a matter of law. This is not an abuse of discretion. The appellate court in reviewing such a situation is correcting an erroneous application of a known rule of law.
However, where the action of the trial judge is within his judicial discretion, as in the establishment of the amount of alimony or award of child custody, the manner of appellate review is altogether different.
Judicial discretion is defined as:
The power exercised by courts to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court.
1 Bouvier's Law Dictionary and Concise Encyclopedia 804 (8th ed. 1914). Our trial judges are granted this discretionary power because it is impossible to establish strict rules of law for every conceivable situation which could arise in the course of a domestic relation proceeding. The trial judge can ordinarily best determine what is appropriate and just because only he can personally observe the participants and events of the trial.
We cite with favor the following statement of the test for review of a judge's discretionary power:
Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

Delno v. Market Street Railway Company, 124 F.2d 965, 967 (9th Cir.1942).
In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the "reasonableness" test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness. [Emphasis added].
Utilizing the foregoing test, we cannot say that the judgment of the trial court, viewed in its totality, reflects a view which no reasonable man would take. Reasonable men could differ as to its propriety in regard to the alimony question presented by the cross-appeal.
*1205 There is a basic flaw in the wife's argument. In her brief she concedes that "although the amount of the alimony award is low, it is arguably within the broad realm of judicial discretion." The amount of periodic alimony, therefore, is not challenged on appeal, only the classification of that alimony as rehabilitative rather than permanent. But the wife's own evidence at trial indicates that, with four years of additional schooling, she can earn an amount very nearly equivalent to the periodic alimony. A reasonable man could conclude that the wife's earning capacity in four years, added to the earning value of her equity in the condominium and the house, should produce a total annual income approximating $32,000, the amount appellee argues was shown by the evidence as necessary to sustain her annually in a manner "reasonably commensurate with the standard established during the marriage." How, then, can an appellate court find an abuse of discretion by the trial judge?
While we may agree with appellee that the amount of alimony seems low, that is not the issue presented to this court. If appropriate, as pointed out in Canakaris, "rehabilitative alimony may be converted to permanent periodic alimony." That conversion, however, must be made, under the facts of the instant case, by the trial court, not the appellate court, upon timely application preceding the expiration of four years. Such an application, of course, should be made if the wife is unable to establish the capacity for self-support.
The wife also maintains on appeal that the trial court erred in not awarding her an attorney fee greater than $10,000 from the husband. Again, this involves an area wherein the trial court is vested with broad discretion. Hill v. Hill, 326 So.2d 207 (Fla. 1st DCA 1976). It is not necessary that we agree with the trial court, only that we find that reasonable men could agree with him, in order to affirm.
The judgment below is AFFIRMED.
DAUKSCH, C.J., and COWART, J., concur.