COBB, Judge.
This appeal by the husband arises from the final judgment of dissolution and challenges the failure of the trial court to award appellant a special equity in the parties’ marital domicile and in its allocation of visitation privileges. The operative facts are:
At the time of dissolution in October, 1981, Robert and Valerie Hipps had been married nearly eleven years, and had two children, ages five and seven. The parties are each twenty-nine years old and are high school graduates. Neither brought property into the marriage in 1971. In 1975 the mother of Valerie made a gift to her of a parcel of unimproved rural land, the deed being solely to Valerie Hipps. The parties then obtained financing from a federal savings and loan in the amount of $20,000 to construct a house on the land. The federal appraised the land at that time as worth $4,000 and appraised the proposed house at $21,500, for a total value of $25,500. Both parties signed the note and mortgage to the federal. For the next five years all of the mortgage payments were made from their joint checking account, but that account was maintained by Robert’s income. The wife was primarily a homemaker during this period, while the husband worked as a truck tire changer.
At nights and on weekends for some five or six months the husband worked an average of four to five hours a day, sometimes until 2:00 and 3:00 in the morning, with periodic help from his father and father-in-law, to construct the home, together with a utility shed and workshop. The wife testified that her husband’s efforts in this regard saved them at least $5,000 from the loan proceeds, which saving was used for family debts and family purposes. The wife also testified that a second mortgage for $6,000 was taken out on the house in 1977, with $5,000 going into the husband’s business and $1,000 going to pay some family bills. The wife testified at trial that the property is now worth from $45,000 to $50,-000. The husband testified that he always considered the home as equally owned by himself and his wife. The parties have no other assets of appreciable value. At the time of trial, Valerie was working as a teacher’s aide with hopes of becoming a full time teacher, and was earning approximately $150 per week net for the ten months she worked per year; Robert was working in a carpentry business with his father and earning approximately $100 per week net.
The final judgment awarded custody of the two children to Valerie, giving Robert specified visitation privileges. He was ordered to pay child support of $25 per week per child and was to provide health insurance for the children. His claim for a special equity in the former marital domicile was denied, and he was ordered to pay off the second mortgage on said property, with Valerie being responsible for paying off the first mortgage. Robert has appealed this judgment in respect to denial of his special equity interest in the home, the terms of his visitation privileges, and the trial court’s failure to abate support during a four week summer visitation period. We find no merit in the third point.
The second point, although dealing with an area wherein the trial court has considerable discretion, causes us some concern. The judgment provides, inter alia, that Robert Hipps shall have visitation with the two children on alternating weekends and “during . . . Christmas 1982 .. . and on alternating years thereafter ...” On its face, this would appear fair. But both attorneys at oral argument advised this court *1236 that the trial court’s interpretation of this provision, as verbally conveyed to them, is that Christmas refers to the entire school vacation period during the Christmas and New Year holiday season. Under this interpretation, one parent would be deprived of custodial or visitation privileges for approximately two weeks each Christmas season. Since the parties live in the same geographical area, this seems unduly harsh to the excluded parent, and interferes with the alternate weekend visitation previously provided in the judgment. The judgment, as we read it, only refers to one day: December 25. If the trial judge intends to amend this interpretation, then he should do so specifically in writing, and we will review his determination at that time on the basis of the applicable test in reviewing discretionary decisions by a trial court. In the meantime, the reference to Christmas in the judgment shall be confined to its clear and literal meaning, and we affirm in regard to point two.
In regard to the first point, the special equity issue, we have considered the record in this case and note the following commentary by the trial judge following the trial testimony, which sets out his basis for denial of the husband’s claim:
This would be a good cause for special equity for the husband. I think probably the criteria is there. Mr. McDonald is right, and it’s there. It would be a good case for special equity. The husband did go over and above and did put personal labor into it, but overriding all of these things in special equity in this divorce, of course, is the fair and equitable distribution of all the parties and looking at the children and the support and what is necessary, so I really think if he said he had a $5,000 special equity based on the five days and four hours a day over five months, we would also have to say that all of this was done for the benefit of the shelter and so forth of his family and children. And I think also that the fathers-in-law, their labors and all, were sort of a gift to the children as one does for children to help them along the way and get them started. So I am not going to find a special equity for the husband because I really consider the wife has the house and that’s really part of his child support obligation, and also balancing out the fact that some of the money went for the husband’s business and things like that, and the wife is sort of stuck with an obligation in case the husband does get in dire circumstances and she has to shoulder that. So, I’m not going to find a special equity for the husband.
The term “special equity” refers to a vested interest in property brought into a marriage or acquired during the marriage because of contributions of services or funds over and above normal marital duty. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Floyd v. Floyd, 383 So.2d 773 (Fla. 5th DCA), review denied, 392 So.2d 1374 (Fla.1980). Here, the appellant claims a special equity arose due to his actual building of the home and the immense amount of his personal work and effort involved in it.
From the statement of the trial judge quoted above, it appears that he first recognized that the husband had established the criteria for a special equity in the subject property by proof of services over and above normal marital duties, but then decided to classify those services as gifts from him to his family and children. From this perspective, it is readily arguable that we are dealing with a characterization that poses a legal question rather than simply a question of the trial court’s discretion. Cf. Hair v. Hair, 402 So.2d 1201 (Fla. 5th DCA 1981), review denied, 412 So.2d 465 (Fla. 1982).
The appellee, in support of the trial court’s ruling, relies primarily on three Florida Supreme Court eases in the following order of argument: Ball v. Ball, 335 So.2d 5 (Fla.1976); Duncan v. Duncan, 379 So.2d 949 (Fla.1980); Ingram v. Ingram, 379 So.2d 955 (Fla.1980).
In Ball, the wife obtained improved realty by inheritance, a source outside of the marriage, then transferred it to herself and her husband as tenants by the entirety. *1237 The trial court held that this conveyance created a presumption of gift which was not overcome by “a mere showing that the wife supplied all of the funds for the property.” Ultimately, the Florida Supreme Court reversed, holding “that a special equity is created by an unrebutted showing ... that all of the consideration for property held as tenants by the entireties [sic] was supplied by one spouse from a source clearly unconnected with the marital relationship.” 335 So.2d at 7. In such cases, where there is no evidence to the contrary, the tenancy is to be viewed as if it were created solely for survivorship purposes during coverture and the conveyance would not create a presumption that a gift was intended. The Ball case is clearly distinguishable from the instant situation wherein the evidence is undisputed that the improved realty, now worth perhaps $50,000, did not come exclusively from a source outside the marriage, but was derived from three sources: (1) the gift to Valerie of an unimproved parcel of rural realty valued at $4,000; (2) the joint loan from the federal of $20,000; and (3) the extraordinary efforts of the husband in working approximately 18 hours a day for five or six months. If there is language in Ball applicable to the instant case, it would be the following:
Either spouse has the right to attempt to establish a “special equity” in the realty by reason of his or her extraordinary contribution toward its acquisition, either financially or through personal industry and service to the other party.
In Duncan, it was held that jointly-held property acquired with accumulated assets earned during the marriage (by the husband’s employment and the wife’s performance of household and child-rearing responsibilities) should not be the subject of a special equity award divesting the title of one party, but could properly be the subject of an award of exclusive possession. That case does not support the denial of a special equity to one party in property to which he has made an extraordinary contribution merely on the basis of a showing of record title or through the guise of transmuting that contribution into child support, which may be equally accomplished by an award of possession, as in Duncan, rather than by a denial or divestment of an established fee interest. The Ingram case, as we read it, stands only for the proposition that a trial court’s denial of a husband’s “special equity” claim to an interest in a marital home owned by the wife prior to marriage should not be reversed on appeal absent a finding that such denial constituted an abuse of discretion.
In the instant case, the trial court, after expressly acknowledging “good cause for special equity for the husband” and that “the husband did go over and above and did put personal labor into it,” then denied the claim of special equity of the husband and left him, after eleven years of struggle, with no assets and an obligation to pay $50 per week child support, plus providing health insurance for the children and discharging the second mortgage, all on an income of $100 per week net. This is an abuse of discretion under Ingram. It transfers Robert Hipps from anemic prosperity to dire misfortune, while leaving the wife, who entered the marriage with nothing, with a weekly income of $150 with the prospect of immediate increase, the child support payments from Robert, and an equity exceeding $25,000 in the marital domicile. This is not “basic fairness.” See Canakaris v. Canakaris, 382 So.2d at 1204.
We believe that the present appeal is controlled by our decision in Floyd v. Floyd, 383 So.2d 773 (Fla. 5th DCA 1980), and by Green v. Green, 228 So.2d 112 (Fla. 3d DCA 1969), cert. denied, 237 So.2d 538 (Fla. 1970). The husband clearly established his special equity in the marital domicile, and it should have been awarded to him by the trial court. We see no basis to treat the parties differently in regard to the fee interest in that property. We reverse and remand for entry of a judgment finding Robert Hipps’s entitlement to a 50% interest in the marital domicile, providing for equal allocation of the mortgage obligations, and awarding the wife the right to exclusive possession of that domicile during the period of her cus *1238 tody of the children and their occupancy thereof during minority.
AFFIRMED in part; REVERSED in part; and REMANDED.
FRANK D. UPCHURCH, Jr. and CO-WART, JJ., concur.