BASKIN, Judge.
The wife appeals a Supplemental Final Judgment of Dissolution of Marriage and Amended Supplemental Final Judgment of Dissolution of Marriage. We reverse.
The parties’ marriage lasted 22 years. The husband, an attorney, earned $235,000 in 1986; $202,000 in 1987; and $150,000 in 1988. The wife, 52 years old when the marriage was dissolved, raised two children and did not work outside the home during most of the marriage. Her numerous medical ailments prevented her from undertaking many household chores, and the husband performed them in her stead. He asserts that the wife’s inability to execute household duties should decrease the amounts he must pay her. The same ailments now prevent the wife from maintaining full-time employment. The parties’ usual household operating expenses were approximately $50,000 per year. At the time the court dissolved their marriage, the parties had amassed debts of $368,000.
In the final judgment, the trial court ordered the husband to pay the wife’s litigation costs, including those pertaining to the employment of financial experts. The trial court awarded custody of the children to the wife on a temporary basis and permitted the wife and children to live in the marital home until it was sold, or for nine months from the entry of the final judgment of dissolution. The court awarded the wife one-third of the stock the husband owned in United National Bank, a closed corporation, as well as 38 percent of the parties’ gross assets. The husband was ordered to pay child support of $430 per month, per child, and $650 per month rehabilitative alimony pending the sale of the marital home. When the marital home has been sold, the child support will increase to $750 per child, and alimony will increase to $1500 per month permanent periodic alimony. The wife moved for rehearing, and simultaneous with its denial of the motion for rehearing, the trial court entered its amended supplemental final judgment increasing the amount of child support to be paid after the wife vacates the marital home to $1000 per child, increased the amount of stock awarded the wife by five percent, and required the husband to obtain a life insurance policy to secure alimony payments. The wife contends the awards are too low.
*103 Although “a trial court need not equalize the financial position of the parties ... a trial judge must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and in viewing the totality of the circumstances, one spouse should not be ‘shortchanged.’ ” Canakaris v. Canakaris, 382 So.2d 1197, 1204 (Fla.1980); Halberg v. Halberg, 519 So.2d 15 (Fla. 3d DCA 1987); Weisfeld v. Weisfeld, 513 So.2d 1278 (Fla. 3d DCA 1987), approved, 545 So.2d 1341 (Fla.1989); Rico v. Rico, 487 So.2d 1161 (Fla. 5th DCA 1986); Berger v. Berger, 464 So.2d 649 (Fla. 4th DCA 1985); see also Carroll v. Carroll, 471 So.2d 1358 (Fla. 3d DCA), review denied, 482 So.2d 347 (Fla.1985). The record demonstrates that the trial court abused its discretion in dividing the assets and in determining alimony in several respects.
First, the husband failed to demonstrate any special circumstances entitling him to receive a disproportionate share of the marital assets: “a spouse’s additional services to the family are not considered to be services beyond normal marital duties where they are necessitated by the other spouse’s- illness.” Barry v. Barry, 511 So.2d 649, 650 (Fla. 4th DCA 1987), review denied, 523 So.2d 576 (Fla.1988); Gallagher v. Gallagher, 399 So.2d 75 (Fla. 5th DCA), appeal dismissed, 407 So.2d 1103 (Fla.1981). Second, the portion of the husband's shares in United National Bank awarded the wife were of no use to her because they could not be sold on the open market; however, the husband’s superior financial connections would enable him to borrow against the value of the shares, if he chose to do so. Thus, in effect, the value of the assets the wife received amounted to less than 38 percent of the marital assets.
Next, we find the trial court’s award of permanent periodic alimony did not improve the financial quagmire in which the property distribution placed the wife. The husband earned an average of $196,000 in the three years preceding the divorce, but was ordered to pay the wife only $18,000 per year in alimony. Even if we were to assume that the wife could obtain and maintain full-time employment as a librarian, circumstances which the record reveals are unlikely to occur, she could expect to earn less than $14,000 per year, and could not hope to attain the standard of living she enjoyed during the marriage. Pirino v. Pirino, 525 So.2d 1028 (Fla. 5th DCA 1988); Carr v. Carr, 522 So.2d 880 (Fla. 1st DCA 1988); Orr v. Orr, 458 So.2d 362 (Fla. 4th DCA 1984), review dismissed, 464 So.2d 555 (Fla.1985). The inadequate award of permanent alimony, coupled with the disproportionate division of the marital assets, caused the wife to pass from prosperity to misfortune, and constituted an abuse of discretion.
For these reasons, we reverse the supplemental final judgment and amended supplemental final judgment and remand the cause to the trial court for equitable distribution of the assets. To achieve that objective, the trial court is directed to award all the shares in United National Bank to the husband and to award the wife the value of the shares to be determined by the court with the aid of expert testimony. The court is directed to divide the remainder of the assets equitably, see Halberg; Carroll, and to increase the alimony award to a reasonable amount.
The wife’s remaining points lack merit.
Reversed and remanded with directions.