588 So.2d 638 (1991)
Ruth S. POLLEY, Petitioner/Appellant,
v.
Richard D. POLLEY, Respondent/Appellee.
Nos. 91-1405, 91-517.
District Court of Appeal of Florida, Third District.
October 22, 1991.
Rehearing Denied December 4, 1991.
*639 Markus & Winter and Dennis E. Wald, Miami, for petitioner/appellant.
*640 Alan S. Rosenthal and Eduardo I. Rasco, North Miami Beach, for respondent/appellee.
Before BASKIN, JORGENSON and LEVY, JJ.
BASKIN, Judge.
Ruth Polley appeals a final judgment of dissolution of marriage. She also seeks a writ of certiorari to review the trial court's denial of her motions to quash writs of garnishment. We reverse the final judgment and deny the petition.[1]
Ruth and Richard Polley were married for 31 years. They have four children, one of whom is a minor. During the marriage, the husband developed a formula for a protective coating for construction materials. The parties marketed the product through Polymorphic Polymers Corporation (PPC), a close corporation, for which they both worked. The wife owns 600 shares of PPC stock.[2] The husband created two close corporations, Hydrodine and Omnidine, to market other products he had developed. He owns 550 shares in Hydrodine and 100% of the shares in Omnidine.
PPC shareholders removed the husband from his position as chief operating officer and elected the wife an officer of the corporation. She earns approximately $55,000 annually in that position. After his removal, the husband began working as a consultant and salesman at another corporation to which he had previously given the formula to PPC's primary product. He has made several sales and has received draws and advances against commissions.
In the final judgment dissolving the marriage, the trial court awarded the husband the wife's interest in the marital home, his controlling shares in Hydrodine and Omnidine and a gold watch and chain given to the wife by her mother-in-law. The husband was not required to pay child support. The court awarded the wife the 600 PPC shares and a 1983 Buick,[3] ordered her to pay the husband $1,000 a month as "rehabilitative alimony" for six years, and to pay the mortgages, taxes, and repair bills for the marital home. She receives no credit for any portion of the expenses. She retains exclusive possession of the home until the minor child becomes eighteen, approximately six years. The trial court also ruled that the wife must pay the husband's attorney's fees. Upon consideration of the final judgment as a whole, we conclude that the judgment is arbitrary and unreasonable. See Hamlet v. Hamlet, 583 So.2d 654 (Fla. 1991). We address each award in turn.
First, we conclude that the trial court erred in failing to order the husband to pay child support for the parties' minor child. Upon the husband's departure from PPC, he obtained employment as a consultant for a company selling the same product. The husband asserts that he receives no income from this position; however, the record indicates that he has accepted draws and advances against commissions from the company. The trial court's denial of child support was based merely on a finding that the husband "has no income of his own," but the record does not support that finding. There is competent substantial evidence that the husband has received income as contemplated by section 61.046(4), Florida Statutes (1989). See Alvarez v. Board of Trustees of the City Pension Fund for Firefighters and Police Officers in the City of Tampa, 580 So.2d 151, 153-4 (Fla. 1991); Zipperer v. Zipperer, 567 So.2d 916 (Fla. 1st DCA 1990), review denied, 581 So.2d 1312 (Fla. 1991). In addition, section 61.30(2)(b), Florida Statutes (1989), provides that "[i]ncome shall be imputed to an unemployed or underemployed parent when such employment or underemployment is found to be voluntary on that parent's part, absent physical or mental incapacity or other circumstances over which the parent has no control." The record is devoid of evidence that the husband's underemployment *641 is involuntary. On the contrary, there is substantial competent evidence that the husband has voluntarily chosen to continue the consulting position despite the lack of adequate remuneration. There are no circumstances to support a finding that the husband lacks the ability to obtain employment commensurate with his proven ability to formulate and market a product or to operate a corporation.
Where both parties are financially able to fulfill their child-support obligations, Cobb v. Cobb, 538 So.2d 1370 (Fla. 3d DCA 1989), one parent's voluntary underemployment does not eradicate that parent's child-support obligation. The trial court should have determined "the employment potential and probable earnings level of the parent ... based upon his ... recent work history, occupational qualifications, and prevailing earnings level in the community... ." § 61.30(2)(b), Fla. Stat. (1989). It did not do so. Accordingly, we hold that the trial court erred in failing to impute income to the husband for child-support purposes. See Huntley v. Huntley, 578 So.2d 890 (Fla. 1st DCA 1991); Scapin v. Scapin, 547 So.2d 1012 (Fla. 1st DCA 1989); Bielecki v. Bielecki, 505 So.2d 546 (Fla. 3d DCA), review dismissed, 511 So.2d 297 (Fla. 1987); Ward v. Ward, 502 So.2d 477 (Fla. 3d DCA 1987); Maddux v. Maddux, 495 So.2d 863 (Fla. 4th DCA 1986). On remand, the trial court is directed to conduct a hearing to ascertain the father's actual and imputed income to determine a child-support award. See § 61.30(2)(b), Fla. Stat. (1989).
In light of our remand for reconsideration of the husband's income, we reverse the trial court's ruling that the wife should pay the husband's attorney's fees and direct the court to entertain further proceedings on the issue consistent with this opinion. Huntley, 578 So.2d at 893; see Mayers v. Mayers, 575 So.2d 321 (Fla. 3d DCA 1991).
Second, we hold that the trial court erred in awarding the husband rehabilitative alimony. "The principal purpose of rehabilitative alimony is to establish the capacity for self-support of the receiving spouse, either through the redevelopment of previous skills or provision of the training necessary to develop potential supportive skills." Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Blumberg v. Blumberg, 561 So.2d 1187, 1188 (Fla. 3d DCA 1989). The record demonstrates that the husband does not need assistance in becoming self-sufficient. He was fully capable of self-support at the end of the marriage and is employed. Furthermore, he has marketable skills. Vena v. Vena, 556 So.2d 436 (Fla. 5th DCA 1990); compare Mayor v. Mayor, 570 So.2d 1044 (Fla. 3d DCA 1990) (former spouse awarded rehabilitative alimony because further education was necessary to improve spouse's income potential). The husband does not require redevelopment of previously acquired skills, and does not plan to obtain additional education or training for his support. Rehabilitative alimony is inappropriate under these circumstances.
Third, we hold that the trial court erred in failing to fashion an equitable distribution scheme. The court found that the marital home and 600 shares of PPC stock were the significant marital assets. It valued the home at between $150,000 and $175,000, subject to $36,000 in notes and mortgages. As for the PPC stock, the court ruled that the stock had no market value "because of substantial, unpaid loans to outside shareholders," but concluded that the shares "have real value to the parties because they can provide an income of not less than $55,000 per year in salary and perks [sic] to the wife." (Emphasis supplied.) The final judgment does not set forth the "real value" of the shares.
The parties do not dispute that the PPC stock is a marital asset and that the stock value is subject to equitable distribution.[4]Lanzetta v. Lanzetta, 563 So.2d 101 *642 (Fla. 3d DCA 1990); Rodriguez v. Rodriguez, 550 So.2d 16 (Fla. 3d DCA 1989); Robbins v. Robbins, 549 So.2d 1033 (Fla. 3d DCA 1989), review denied, 560 So.2d 234 (Fla. 1990); Manzella v. Manzella, 473 So.2d 39 (Fla. 3d DCA 1985); Novak v. Novak, 429 So.2d 414 (Fla. 4th DCA), review denied, 438 So.2d 833 (Fla. 1983). The wife contends that the trial court erred in treating her salary as an asset for equitable distribution purposes. Although we find that the trial court did not consider the wife's salary a marital asset, we conclude that the evidence does not support the trial court's valuation of the PPC stock. The trial court's valuation of the PPC stock must be supported by competent substantial evidence. Eckroade v. Eckroade, 570 So.2d 1347 (Fla. 3d DCA 1990); Ross v. Bandi, 566 So.2d 55 (Fla. 4th DCA 1990); Hamm v. Hamm, 492 So.2d 467 (Fla. 1st DCA 1986); Marcoux v. Marcoux, 475 So.2d 972 (Fla. 4th DCA 1985), review denied, 486 So.2d 597 (Fla. 1986); Greer v. Greer, 438 So.2d 535 (Fla. 2d DCA 1983); Hair v. Hair, 402 So.2d 1201 (Fla. 5th DCA 1981), review denied, 412 So.2d 465 (Fla. 1982). Absent such evidence, the trial court's valuation constitutes an abuse of discretion. See Marcoux v. Marcoux, 464 So.2d 542, 544 (Fla. 1985); Zucker v. Zucker, 577 So.2d 591 (Fla. 3d DCA 1991); Sheffield v. Sheffield, 522 So.2d 986 (Fla. 1st DCA 1988); Addington v. Addington, 522 So.2d 897 (Fla. 1st DCA 1988).
The wife presented expert testimony as to the value of the parties' interest in PPC. The expert testified that in his professional opinion, based on an analysis of PPC's business and financial documents, and other factors, the corporation had a negative value.[5] The husband did not present any evidence to contradict that conclusion. Nevertheless, the trial court apparently valued the parties' interest in the business at approximately the value of the marital home, and concluded that the award of the stock to the wife justified awarding the husband the entire equity in the marital home. No record evidence supports this assessment of the parties' interest in PPC. Zucker; Ross; Sanders v. Sanders, 553 So.2d 767 (Fla. 1st DCA 1989); Sheffield, Addington; see Lipsitt v. Lipsitt, 580 So.2d 174 (Fla. 4th DCA 1991): Huntley; Eckroade. The only evidence before the court demonstrates that, as a business, PPC has a negative value. The wife earns her salary by working at the corporation; her salary is earned and does not constitute a distribution of corporate profits. Although the stock does have some value to the wife because it permits her to work at PPC and gain a salary,[6] her remuneration does not represent the parties' interest in PPC for distribution purposes. See Binder v. Binder, 538 So.2d 925 (Fla. 1st DCA 1989); Sheffield; Addington; see also Rogers v. Rogers, 296 N.W.2d 849, 853 (Minn. 1980). The trial court's valuation is, at best, a speculative evaluation of the parties' PPC interest. See Petticrew v. Petticrew, 586 So.2d 508 (Fla. 5th DCA 1991).
"[T]he starting point for equitable distribution is an award of half [the marital assets] to each party; only upon a showing of extraordinary circumstances will an unequal division of assets be appropriate." Eckroade, 570 So.2d at 1349. Because the *643 evidence established that the business has a negative value, the marital home is the only significant asset. The trial court's equitable distribution scheme, which awarded the only significant asset to the husband, may not stand absent a basis for a disproportionate distribution. The record does not disclose such basis. There is no merit in the husband's assertion that the wife's business conduct entitled him to special treatment. The trial court expressly found that the husband was lawfully ousted from PPC. In fact, the court ruled that the husband has no claim against the wife for wrongful termination as a PPC officer and employee. Because no basis for the disproportionate award appears in the record, we vacate the award of the marital home to the husband.[7]Soll v. Soll, 560 So.2d 250 (Fla. 3d DCA 1990); Bergstrom v. Bergstrom, 559 So.2d 82 (Fla. 3d DCA), review denied, 574 So.2d 139 (Fla. 1990); Zachary v. Zachary, 551 So.2d 577 (Fla. 2d DCA 1989); Cobb; Satanonchai v. Satanonchai, 522 So.2d 1030 (Fla. 3d DCA 1988); see Canakaris. On remand, the trial court is directed to award the wife half the marital home, and to provide that the wife receive a credit for half the mortgage payments, repair bills, taxes and insurance upon the sale of the marital home.[8]Kelly v. Kelly, 583 So.2d 667 (Fla. 1991); Tinsley v. Tinsley, 490 So.2d 205 (Fla. 3d DCA 1986).
We also hold that the gold watch and chain are not subject to equitable distribution. In the final judgment, the court stated that the items were given to the wife by the husband's mother. The uncontroverted evidence supports that finding. Section 61.075(1), Florida Statutes (1989), provides that the court shall set apart each spouse's nonmarital assets and liabilities and shall distribute the parties' marital assets and liabilities. However, according to section 61.075(3)(b)(2), noninterspousal gifts acquired separately by either party are nonmarital assets. Because the watch and chain given to the wife are noninterspousal gifts, the court erred in awarding them to the husband. Accordingly, we vacate that award.
Finally, we consider the petition for writ of certiorari directed to the trial court's denial of the wife's motion to quash the writs of garnishment. The husband obtained the writs to collect the judgment award of attorney's fees. This court's reversal of the trial court's judgment ordering the wife to pay the husband's attorney's fees renders the petition moot. See Camodeca v. Camodeca, 470 So.2d 863 (Fla. 2d DCA 1985); National Car Rental Sys., Inc. v. Bruce A. Ryals Enter., Inc., 380 So.2d 529, 531 (Fla. 5th DCA 1980); see also, Hamilton v. Hanks, 309 So.2d 229, 230 (Fla. 4th DCA 1975).
In summary, we reverse the portions of the judgment that relieve the husband of child-support obligations and those that award him: 1) rehabilitative alimony, 2) the wife's interest in the marital home, 3) the watch and chain, and 4) attorney's fees. We deny the petition for writ of certiorari.
Reversed and remanded with directions; certiorari denied.
NOTES
[1] The petition and appeal have been consolidated.
[2] The wife is one of several PPC shareholders.
[3] The wife agreed that the husband would receive the gun collection, paintings, antiques, fishing and skiing equipment; the court awarded the wife the remaining property in the marital home.
[4] The record demonstrates that the trial court correctly awarded the PPC shares to the wife. The final judgment states: "It is clear to the Court that the Husband cannot exist in the corporation because the minority shareholders who are owed substantial sums of money in excess of $300,000.00 by PPC, will not tolerate him there, and their allegiance is to the Wife." See Robbins v. Robbins, 549 So.2d 1033 (Fla. 3d DCA 1989), review denied, 560 So.2d 234 (Fla. 1990).
[5] The expert gathered information on all aspects of PPC's business. He determined that the 600 PPC shares, which represent a 60 percent interest in PPC, had a negative value under two different valuation methods. The expert further testified that the corporation was undercapitalized, lacked the income to become more competitive in such a competitive field with a product that lacked differentiation from its competitors and did not have sufficient earnings to pay outstanding loans to minority shareholders.
[6] Despite her 60% interest in PPC, the outstanding shareholder loans render tenuous her corporate employment. We also note that the husband retains PPC's major assets  his expertise and the product formula  as well as the stock in Omnidine and Hydrodine. The record demonstrates that Hydrodine has a negative book value; it provides a vehicle for the sale of products developed by the husband. Both parties have the ability to earn income from marketing the PPC product. In fact, the husband is selling the PPC product in his present consulting position.
[7] The trial court properly awarded the wife exclusive possession of the marital home until the minor child reaches eighteen years of age. Sanchez v. Sanchez, 577 So.2d 697 (Fla. 3d DCA 1991); Gonzalez v. Gonzalez, 563 So.2d 813 (Fla. 3d DCA 1990).
[8] In addition, the wife obtained a personal loan to finance replacement of the marital home roof. The final judgment does not disclose whether the trial court considered this liability in fashioning the equitable distribution scheme. Section 61.075(3)(a)(1) provides that "`[m]arital ... liabilities' include: 1... . liabilities incurred during the marriage, individually by either spouse or jointly by them[.]" [emphasis added]. Unless the husband can overcome the presumption that such loan is a marital liability, § 61.075(5), Fla. Stat. (1989), the court should equitably distribute such liability.